**STATE of Utah, Plaintiff and Appellee,**

v.

**John Donald PETERS, Defendant and Appellant.**

**No. 890714–CA.**

Court of Appeals of Utah.

Aug. 2, 1990.

Robert Van Sciver, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen. and Barbara Bearnson, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BENCH and GARFF, JJ., and CONDER [1], Senior District Judge.

## OPINION

**DEAN E. CONDER, Senior District Judge:**

Defendant John Donald Peters appeals his conviction of forcible sexual abuse, a second-degree felony. We affirm.

## FACTS

On a January afternoon in 1989, P.P., the 17-year-old victim, left school and walked a few blocks to a bus stop. The weather was cold. After she had waited for a bus about seven minutes, Peters drove up in a pick-up truck and asked her if she wanted a ride. She voluntarily got into his truck and said that she would like a ride to downtown Salt Lake City where she could catch another bus that would take her to her suburban home. At first she had little apprehension, carried on a conversation with Peters, and remarked that she was interested in art. Later on the way, Peters said he had been collecting aluminum cans and wanted to stop at a house where he thought he could find some. He then stopped in a derelict area, left the truck, and was gone a few minutes. P.P. did not then leave the truck.

When Peters returned, he again started driving toward the downtown area, but then made a "U" turn and headed back toward the abandoned house. He told P.P. that there were some paintings inside the house and suggested that she go inside and see them. She said, "I thought, well, what's to lose," and got out of the truck and went toward the house thinking that she would just look through the window, but she followed Peters inside.

Once inside, she realized that the house was totally empty and turned to leave. Pe-

---

1. Dean E. Conder, Senior District Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(10) (Supp.1990).

ters then "grabbed [her] behind the jacket and pushed [her] in front of him, and forced [her] to go down the hall." He then pushed her into a room at the back of the house and blocked the doorway. Peters was 6 feet 3 inches tall and weighed 330 pounds, and P.P. was 5 feet 9 inches tall and weighed 128 pounds. Peters told P.P. repeatedly and in coarse terms that he wanted to have sexual relations with her, and P.P. resisted, later testifying "I begged him not to rape me, over and over. And I asked him repeatedly not to hurt me and he answered and said, 'I won't hurt you as long as you do what I tell you to do.'" The conversation along these lines continued for about twenty minutes. At one point, Peters asked P.P. how much money she had. She said she would give him all that she had if he would let her go and not harm her. Toward the end of their conversation, Peters placed his hand on her left breast on the outside of her clothing and said, "Let me just see one thing." Peters then apparently changed his mind and told the victim he would take her downtown.

They left the vacant house and returned to the truck. Peters asked P.P., "Are you okay? I am really sorry..... Promise me you'll never take a ride from a stranger ever again because you know, some bastard will take you in some alley and slit your throat." He drove her downtown and let her out the of the truck.

P.P. went into a shopping mall and, crying and upset, phoned a girlfriend to come to her aid. The friend had to travel downtown by bus, and about one and one-half hours passed before they met. The friend persuaded P.P. to go to a police station located in the mall. The detective there said that P.P. was still visibly traumatized when he talked to her, about an hour and a half after the incident.

## STANDARD OF REVIEW

Peters was convicted upon a verdict finding him guilty of forcible sexual abuse. This court reviews the evidence in the light most favorable to upholding the verdict, and reverses it only upon a showing that the evidence so clearly preponderates in favor of the appellant that reasonable minds would necessarily have harbored a reasonable doubt on the outcome of the case. *See State v. Gardner*, 789 P.2d 273, 284–85 (Utah 1989); *State v. Dibello*, 780 P.2d 1221 (Utah 1989).

## FORCIBLE SEXUAL ABUSE

■ The information charged Peters with forcible sexual abuse, a second-degree felony, in violation of Utah Code Ann. § 76–5–404(1) (1990). That statute reads as follows:

(1) A person commits forcible sexual abuse if the victim is 14 years of age or older and, under circumstances not amounting to rape, object rape, sodomy, or attempted rape or sodomy, the actor touches the anus, buttocks, or any part of the genitals of another, or touches the breasts of a female, or otherwise takes indecent liberties with another, or causes another to take indecent liberties with the actor or another, with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person, without the consent of the other, regardless of the sex of any participant.

Peters points out that he did not have a skin-to-skin contact with the victim and argues that his conduct thus did not amount to a violation of section 76–5–404. Peters cites two cases in support of his position, *State ex rel. L.G.W.*, 641 P.2d 127 (Utah 1982) and *State ex rel. J.L.S.*, 610 P.2d 1294 (Utah 1980). In both of those cases, the court held that momentary touching over the victim's clothing with an invitation to sexual activity did not amount to "taking indecent liberties" under section 76–5–404 as it then read. Section 76–5–404 was amended in 1983 to specifically prohibit touching the breast of a female.

The juxtaposition by Peters of section 76–5–404 and the *L.G.W.* and *J.L.S.* cases raises two distinct questions of statutory construction in this case: (1) whether the touching of the female breast prohibited in section 76–5–404(1) is a skin-to-skin touching, and (2) whether Peters' conduct consti-

tutes "taking indecent liberties." These questions are, in a basic sense, manifestations of a recurring problem in construing statutes, particularly those prohibiting sex crimes: On the one hand, there is the need to give effect to the legislative intent and penalize sexual abuse, a concept which, in all its possible forms, is extremely difficult to define. On the other hand, there is a need to define the prohibited conduct with precision in order to avoid unconstitutional vagueness and chilling of protected conduct,[2] and to avoid attaching the weight of criminal culpability to innocent or innocuous (but possibly indecorous) behavior.[3]

Utah courts have addressed this problem by interpreting the broad, catch-all phrases of sex crime statutes (phrases such as "taking indecent liberties") in light of all of the facts and circumstances of the case. Thus, in *State v. Bishop*, 753 P.2d 439, 481–82 (Utah 1988),[4] the court held that the question whether Bishop had taken indecent liberties was not simply a matter of whether he had touched an enumerated body part of the victim. Rather, in determining whether Bishop had taken indecent liberties, the court examined the "totality of the facts," focusing on factors such as:

(1) The nature of the victim's participation (whether the defendant required the victim's participation);

(2) The duration of the defendant's act;

(3) The defendant's willingness to terminate his conduct at the victim's request;

(4) The relationship between the victim and the defendant;

(5) The age of the victim.

Though not enumerated in the list of factors in *Bishop*, the court also considered how intrusive the act was against the victim's person. Moreover, under the particular facts of a case, any fact would be material which relates to the significance of the defendant's act in terms of its proba-

ble consequences and the need to respond with criminal sanctions. With all relevant facts in mind, the court in Bishop compared the facts to the misdeeds specified in the statute, concluded that Bishop's acts were of equal gravity,[5] and held that Bishop had taken indecent liberties in violation of the statute.

This inquiry into all of the facts surrounding the event in question contrasts with the simpler inquiry suggested by a proscription against touching a specified body part. Where the defendant has touched a body part specified in the statute, the court inquires into the surrounding factual background only as it may be relevant to other elements of and defenses to the crime. *See J.L.S.*, 610 P.2d at 1296. The result is a statute that clearly specifies and prohibits certain enumerated acts, and then adds a catch-all extending the scope of the statute to cover other sexual misconduct of equal gravity. *Id., see also Bishop*, 753 P.2d at 482.

Turning to Peters' argument in this case, section 76–5–404 does not specify whether the prohibited touching of an enumerated body part is of a clothed, as well as of a naked part, nor have we been able to glean any information on legislative intent from the legislative history. Absent any express direction from the legislature, we regard the presence of clothing on the touched body part as an important fact in determining whether a defendant has taken indecent liberties.

In light of this and the other relevant facts, Peters's acts constitute "taking indecent liberties" for purposes of the statute prohibiting forcible sexual abuse. Peters enticed the youthful P.P. into the abandoned house by pretense and there detained her against her will for about 20 minutes to serve his sexual purposes. It is in that setting that he placed his hand on

---

**2.** *See, e.g., Provo City Corp. v. Willden,* 768 P.2d 455 (Utah 1989); *L.G.W.,* 641 P.2d at 131.

**3.** *See State v. Serpente,* 768 P.2d 994 (Utah Ct. App.1989).

**4.** *See also State v. Thatcher,* 667 P.2d 23, 24 (Utah 1983).

**5.** The court held in *J.L.S.,* 610 P.2d at 1296 and in *State v. Kennedy,* 616 P.2d 594, 597 (Utah 1980) that the statute implies that the acts covered by the catch-all "taking indecent liberties" must be "of equal magnitude of gravity to those specifically set forth in the section," and that the equal-gravity requirement preserves the statute from unconstitutional vagueness.

the breast of his frightened, pleading victim. To his credit, Peters was not without compunctions or regret, and he did eventually desist; however, on balance, we find his misconduct sufficiently grave to constitute forcible sexual abuse in violation of section 76-5-404(1).

### PROSECUTOR'S REMARKS

■ Evidence was available in this case that, about two weeks after the incident for which Peters was charged, Peters allegedly took another woman to the same abandoned house and raped her, but was nevertheless acquitted for that offense. The prosecutor notified the defense before trial that the prosecution would introduce evidence of this subsequent offense at trial. Accordingly, while cross-examining the defendant, the prosecutor asked, "Isn't it true that you subsequently went to this location with another woman—." At this point defense counsel objected:

> [DEFENSE COUNSEL]: I object to that. Your Honor, that is pretty bad, really.
> THE COURT: Subsequent acts? You are talking about a subsequent event?
> [PROSECUTOR]: Yes. Under Rule 404B, a signature crime.
> [DEFENSE COUNSEL]: Wait a minute, wait a minute. Let's excuse the jury.

At this point, the jury was admonished and sent out of the courtroom. After some discussion, the court determined that the testimony that the prosecutor had attempted to elicit was inadmissible. Defense counsel thereupon moved for a mistrial, but the motion was denied. Instead, the court instructed the jury upon its return:

> Ladies and gentlemen, with regard to the last exchange between the prosecutor and the witness, I would ask you and admonish you that you would ignore the question and the answer and the comments of the parties, including the defendant and the prosecutor. The Court has determined what was asked is inadmissible, and sustained an objection to it. You are admonished to disregard it.

On appeal, Peters argues that the prosecutor committed misconduct in mentioning the subsequent alleged offense to the jury.

An appellate court will reverse if "the actions or remarks of counsel call to the attention of the jury a matter it would not be justified in considering in determining its verdict and, if so, under the circumstances of the particular case, whether the error is substantial and prejudicial such that there is a reasonable likelihood that, in its absence, there would have been a more favorable result absent the misconduct." *State v. Gardner,* 789 P.2d at 287; *accord State v. Speer,* 750 P.2d 186 (Utah 1988); *State v. Tillman,* 750 P.2d 546 (Utah 1987); *State v. Troy,* 688 P.2d 483 (Utah 1984).

In this case, we conclude that any prosecutorial misconduct was not prejudicial. The question, as far as it was stated, did not mention another crime committed by Peters. In response to Peters's objection, the prosecutor alluded to "a signature crime," a bit of jargon that may not have had much meaning to the jury. Although the jury was in a position to speculate about whether Peters had gone to the abandoned house with another woman and committed a crime, the court's limiting instruction minimized the danger of such speculation to the point of being harmless. The jury was clearly told at the earliest opportunity to disregard the question and comments of the prosecutor. We have no delusion that a limiting instruction can undo serious prejudice, *see Bruton v. United States,* 391 U.S. 123, 128-29, 88 S.Ct. 1620, 1623-24, 20 L.Ed.2d 476 (1968), but Utah courts have recognized that limiting instructions nevertheless reduce somewhat the danger of improper prejudice. *See, e.g., State v. Wareham,* 772 P.2d 960, 963-65 (Utah 1989); *State v. Auble,* 754 P.2d 935, 938 (Utah 1988); *State v. Bartley,* 784 P.2d 1231, 1237-38 (Utah Ct.App.1989). In this case, we adjudge that the clear limiting instruction given by the trial court counteracted the rather moderate prejudice to a degree sufficient to render any prosecutorial misconduct harmless.

### COMMENT BY ANOTHER WITNESS ON THE VICTIM'S TESTIMONY

■ Peters challenges the admission of certain testimony in response to a question

asked by the prosecutor to P.P.'s friend, whom P.P. telephoned immediately after the incident:

Q. And what happened [when P.P. tele-phoned you]?

A. She asked me to come downtown and she said that she was really upset and something had just happened to her, and so I went downtown.

. . . .

Q. And did she tell you what happened to her?

A. Not over the phone, she didn't.

Q. And how did she sound when you talked to her on the telephone?

A. She was crying. She was really up-set.

Q. Okay. Had you ever seen her cry-ing or upset like that?

A. Yes.

Q. Did anything that she said or the way she sounded in any way sound con-trived or false to you?

[DEFENSE COUNSEL]: That is leading. THE COURT: I don't think so. She may answer.

[DEFENSE COUNSEL]: Contrived or false? We are talking about [in]tonation and voice, not whether the statement is in fact true or false. Is that—

THE COURT: That's my ruling Mr. Van Sciver.

The witness thereupon answered the ques-tion in the negative. Peters now argues that the friend's answer can be understood as an opinion on P.P.'s truthfulness and was inadmissible under Utah R.Evid. 608 for the reasons noted in *State v. Rim-masch,* 775 P.2d 388, 391–93 (Utah 1989); *see also State v. Bates,* 784 P.2d 1126, 1128–29 (1989).

However, the possible applicability of Rule 608 and *Rimmasch* was not argued below. The grounds for Peters' objection were that it was leading, not that it was inadmissible under Rule 608 and *Rim-masch.* As Utah courts have often held, this failure to state in the court below the grounds advanced on appeal precludes our review of the issue unless we find it to be plain error, which it is not. *State v. Bull-ock,* 791 P.2d 155, 157–59 (1989); *State v.*

*Eldredge,* 773 P.2d 29, 34–35, (Utah) *cert. denied* —— U.S. ——, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989).

We have carefully reviewed all other points raised by the appellant and have concluded that they are without merit. The conviction is affirmed.

BENCH and GARFF, JJ., concur.