2007 UT App 255

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jeff Delease HIRSCHI, Defendant and Appellant.**

**No. 20060199–CA.**

Court of Appeals of Utah.

July 27, 2007.

504

Phillip W. Dyer and Carey A. Seager, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Karen A. Klucznik, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges BILLINGS, McHUGH, and ORME.

## OPINION

ORME, Judge:

¶ 1 Accepting his conviction of simple assault, *see* Utah Code Ann. § 76-5-102 (2003), Defendant Jeff Delease Hirschi appeals his conviction of forcible sexual abuse, *see id.* § 76-5-404, arguing that there was insufficient evidence to support his conviction. We

conclude that the State's evidence was sufficiently inconclusive for a jury to find, beyond a reasonable doubt, that Hirschi touched the victim's buttocks. Accordingly, we remand for the trial court to set aside Hirschi's conviction of forcible sexual abuse and to enter instead a conviction of sexual battery.

## BACKGROUND

¶2 At the outset, we note that this case presents an unusual circumstance. The jury, in all candor, appears to have gotten its verdicts backward. As the events described below show, the evidence did not support a conviction of forcible sexual abuse but surely seems to have supported a conviction of aggravated assault rather than simple assault. The jury found, however, that the sexual offense—the repeated flicking of the victim's underwear and grabbing her buttocks twice, which the State concedes is on the low end of sexual abuse—rose to the level of forcible sexual abuse, a second degree felony, rather than sexual battery, a class A misdemeanor.[1] At the same time, the jury found that the assault—grabbing the victim by her neck, pushing her to the ground, and strangling her for ten seconds to the point that she could no longer fight and almost blacked out—only amounted to simple assault, a class B misdemeanor, rather than aggravated assault, a third degree felony.[2]

¶3 The relevant incidents took place on the night of March 4, 2005, at the Rock Bottom Bar, an establishment owned by Hirschi. Prior to arriving at the Rock Bottom that night, Hirschi began drinking vodka mixed with cranberry juice around 4:00 p.m. at home, each drink containing approximately two ounces of vodka. He poured himself a new drink about every fifteen to thirty minutes until his roommate dropped him off at the Rock Bottom at around 7:30 or 8:00 p.m., where he continued drinking. Shortly after arriving at the Rock Bottom, Hirschi approached Christina Underwood, an off-duty bartender, and A.K., the victim in this case, who were sitting at the bar. Hirschi introduced himself to A.K. and hugged her in greeting. They conversed for a few minutes, and Hirschi repeatedly invited A.K. to go hot-tubbing at his house. A.K. declined each of these invitations. During this initial conversation, Hirschi, according to A.K., "grabbed at" her partially exposed underwear[3] several times.

> [H]e just grabbed at it, and I told him to stop. I kept pulling my shirt down, you know, trying to cover myself up. He said, "Oh, leave it. It's cute." I said, "No, it's not cute." He just kept doing it and I kept telling him to stop. He then proceeded to stick his hand down my pants.

According to A.K., after Hirschi "st[u]ck his hand down [her] pants" he groped her buttocks. A.K. agreed that it was a quick grab, with Hirschi's hand entering and exiting her pants in a matter of four to five seconds. Hirschi admitted that "he gave [A.K.'s underwear] a little snuggie" but denied sticking his hand down her pants and groping her buttocks.

¶4 A.K. eventually got up and walked away from Hirschi "so he would stop[,]" and

1. *Compare* Utah Code Ann. § 76–5–404(1), (2) (2003) (making it a second degree felony to touch another's buttocks "with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person, without the consent of the other"), *and State v. Jacobs*, 2006 UT App 356, ¶¶ 7–9, 144 P.3d 226 (interpreting the term "touching" in section 76–5–404, the forcible sexual abuse statute, as contemplating the touching of the actual buttocks or other enumerated body part), *with* Utah Code Ann. § 76–9–702(3), (4) (2003) (defining the sexual battery class A misdemeanor as including the intentional touching of a person's buttocks, "whether or not through clothing, ... under circumstances the actor knows or should know will likely cause affront or alarm to the person touched").

2. *Compare* Utah Code Ann. § 76–5–102(1)(c), (2) (2003) (providing that simple assault, a class B misdemeanor, is "an act, committed with unlawful force or violence, that causes bodily injury to another or creates a substantial risk of bodily injury to another"), *with id.* § 76–5–103(1)(b), (3) (providing that "[a] person commits aggravated assault[, a third degree felony,] if he commits [simple] assault" and "uses a dangerous weapon ... or other means of force likely to produce death or serious bodily injury").

3. A.K. testified that her "shirt was long enough to be covering the back of [her] pants." Apparently, when she leaned forward in her chair, her shirt would rise up on her back, partially exposing her underwear.

Hirschi subsequently left that area of the bar. A minute or two later, A.K. passed Hirschi on her way to the bathroom and "tapped him on the back and said hello." [4] Hirschi thought this hello tap meant that "she was interested[and] wondered why [he] had left." A.K. testified that she "d[idn't] know why [she] did it," as she was irritated with him regarding his previous behavior. A.K. acknowledged, however, that she was being friendly with the tap and greeting. After about forty minutes, Hirschi returned to stand next to A.K. while she sat at the bar. Hirschi again pulled at her underwear. According to A.K., Hirschi then stuck his hand down her pants and grabbed her buttocks for the second time. A.K. then turned back, leading with her elbow, and "told him to keep his hands off [her]," pushing him with her whole arm to get him off her. Hirschi claimed A.K. "smacked [him] in the eye." At that point, Hirschi and A.K. got into a heated argument and Hirschi "put his hand on [her] neck and said, 'How F-ing serious do you want to get?'" A.K. retorted in kind, whereupon Hirschi "grabbed [A.K.] by [her] neck [with both hands] and pushed [her] to the floor" where he choked her for about ten seconds until "[she] couldn't fight him anymore" and almost blacked out.

¶ 5 Hirschi acknowledged that because of his heavy alcohol consumption, his memory of the evening was not perfect. (We think "selective" may be a more accurate characterization.) He testified that he approached A.K. again "to resume flirting with her" and "[t]he next thing that [he] remember[ed was] getting smacked in the eye." He thought, "Wow, where did that come from?" He "remember[ed] pushing her over and saying, 'How serious do you want to get?'" He does not, however, remember choking A.K. or putting his hand down her pants. All he remembers doing is giving her underwear a "little snuggie."

¶ 6 Underwood, the off-duty bartender, recalled seeing Hirschi flick A.K.'s underwear once, which she described as a quick pull on the elastic band, making it pop against the skin, but does not remember at what point during the night she saw this. Underwood also testified that, as she was speaking with another friend, she "heard a loud bang" from the chair falling and then looked over and saw both Hirschi and A.K. on the floor. Because she could not see what was happening on the floor, she thought the chair had simply tipped over, and that Hirschi was helping A.K. up, so she turned away to resume her conversation. After A.K. stood up, Underwood testified,

> she looked completely distraught. She just—her face was white as a ghost, ... I mean her eyes were kind of watering like she was in a panic. You could completely tell she was in a panic. I said, "Are you okay?" She said, "No, I'm not.... He choked me."

¶ 7 Armondo Reyes, another bar patron, also testified that he "heard the commotion, and she was screaming as she was falling back.... [Hirschi] went over the top of her when they were on the ground." Reyes further testified that "she looked like she was frightened [when she got up].... [S]omething wasn't right." A.K. told Reyes that Hirschi "choked her."

¶ 8 Following the choking incident, A.K. and Underwood retreated to the bar's well-lit bathroom and discussed what had happened. Underwood observed red marks on A.K.'s neck. A.K. subsequently called the police. The responding police officer, Sergeant Greg Olsen, testified that A.K. reported Hirschi "had come up and put his hands down the back of her pants and ended up groping her buttocks and also the underwear." Her written statement taken at the scene, however, did not mention that Hirschi stuck his hand

---

**4.** Hirschi's brief refers to this contact from A.K. as a "goose," and our review of the record shows that this word was first introduced by Hirschi's counsel at trial when he asked A.K. if she goosed Hirschi in the side. A.K.'s response was that she "[j]ust patted him on the back[.]" Hirschi did not testify that A.K. goosed him. Our review of the evidence at trial, including a surveillance video, shows that A.K. simply poked Hirschi in the ribs. If A.K. had in fact "goosed" Hirschi after their first encounter that night, we would have an entirely different case, especially with regard to consent. *See Webster's Third International Dictionary* 979 (1993) (defining "goose" as "to poke ... between buttocks with an upward thrust"). We caution against introducing terms on appeal that are not supported by the record and mischaracterize the actions of the parties.

down her pants, only that he grabbed at her underwear. Sergeant Olsen also remembered A.K. telling him that as Hirschi choked her, "she came very close to passing out" before he let her go. Although Sergeant Olsen thought A.K. was "emotional," he also found her to be "very coherent. She knew exactly what she was talking about." Finally, Sergeant Olsen testified that A.K. appeared to have been assaulted because her neck had "reddened inflammation where it looked like fingerprints had come around her neck."

¶ 9 Acting on A.K.'s statements, Sergeant Olsen intercepted Hirschi as he was walking away from the bar and arrested him. For her part, A.K. returned to the bar with her friends and remained, socializing and drinking, until closing time.

¶ 10 Sergeant Olsen, Underwood, Hirschi, and A.K. all testified that Hirschi was intoxicated that night. A.K. had been drinking too, but she does not remember exactly how much she drank before the choking incident occurred. More importantly for this appeal, A.K. also testified that she could not remember what type or style of underwear she was wearing. None of the other witnesses testified regarding the style of underwear she was wearing either, nor was any other evidence presented on that subject.

¶ 11 Hirschi was charged with forcible sexual abuse, a second degree felony, *see* Utah Code Ann. § 76–5–404(1), (2) (2003), and aggravated assault, a third degree felony, *see id.* § 76–5–103(1)(b), (3). After the State rested at trial, Hirschi's counsel orally moved for "a directed verdict, in the form of either dismissal of the charges or a reduction to the appropriate lesser included misdemeanor offenses[,]" sexual battery, a class A misdemeanor, *see id.* § 76–9–702(3), (4), and simple assault, a class B misdemeanor, *see id.* § 76–5–102(1)(c), (2). Rather than ruling on the motion at that time, the trial court stated that it would "preserve [Hirschi's] position as if [the] motion were made at [that] time" and ordered Hirschi to proceed with his evidence.

After Hirschi testified, the defense rested and renewed the motion for a directed verdict. The trial court heard both Hirschi's and the State's arguments and stated, "[T]here are questions of fact that the jury must resolve as they relate to each of the two charges, therefore I'm going to deny the motion for a directed verdict." [5]

¶ 12 With regard to the forcible sexual abuse statute, the trial court instructed the jury that if it found Hirschi touched A.K.'s buttocks with the requisite intent and without her consent, it should convict Hirschi of forcible sexual abuse. It further instructed the jury that "any incidental, momentary or fleeting touch of [her] buttocks [was] insufficient to establish the necessary touching requirement [of] ... Forcible Sexual Abuse." The trial court did not instruct the jury regarding the indecent liberties prong of the statute, *see id.* § 76–5–404(1), nor did the parties present any arguments regarding whether Hirschi's actions amounted to taking indecent liberties with A.K.

¶ 13 The jury found Hirschi guilty of forcible sexual abuse and simple assault. For the forcible sexual abuse conviction, the trial court sentenced Hirschi to an indeterminate term of one to fifteen years and, for the simple assault conviction, sentenced Hirschi to six months, ordering the sentences to run concurrently. The trial court then suspended both sentences, put Hirschi on probation for twenty-four months, and ordered him to serve one year in jail—with credit for sixty days served—as a condition of probation. The court also, among other conditions, ordered Hirschi to pay a $750 fine for both convictions and to "[c]omply with sex offender conditions, Group B."

¶ 14 Hirschi appeals, arguing that (1) the trial court erred by failing to rule on his motion for a directed verdict at the close of the prosecution's case, compelling him to testify against himself in violation of his Fifth Amendment right against self-incrimination; (2) the trial court erred in denying his motion

---

5. Hirschi argues that it is unclear what standard the trial court used in ruling on the motion. While this may be true, it is inconsequential. Even if the trial court applied the wrong standard, its ruling on a directed verdict implements a legal conclusion, which we review without deference and for correctness. *Cf. State v. Krueger*, 1999 UT App 54, ¶ 10, 975 P.2d 489 (regarding standard of review for a trial court's ruling on a motion to dismiss).

**508**

for a directed verdict after the defense rested; and (3) the jury verdict as to the forcible sexual abuse charge was not sufficiently supported by evidence in the record.

## ISSUES AND STANDARDS OF REVIEW

¶ 15 Hirschi's challenges to the jury verdict and to the trial court's ruling on his motion for a directed verdict present the main issues [6] on appeal. A trial court's ruling on a motion for a directed verdict "is a question of law[,] which we review for correctness[,] giving no particular deference to the trial court's legal conclusions." *State v. Krueger*, 1999 UT App 54, ¶ 10, 975 P.2d 489 (making this declaration with regard to a trial court's ruling on a motion to dismiss). When a party moves

> for a directed verdict based on a claim of insufficiency of the evidence, "[w]e will uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt."

*State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (quoting *State v. Dibello*, 780 P.2d 1221, 1225 (Utah 1989)) (alteration in original).

> When a jury verdict is challenged on the ground that the evidence is insufficient, ... "[w]e review the evidence and all inferences which may reasonably be drawn

from it in the light most favorable to the verdict.... We reverse ... only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted."

*State v. Hamilton*, 827 P.2d 232, 236 (Utah 1992) (quoting *State v. Booker*, 709 P.2d 342, 345 (Utah 1985)).

¶ 16 Because our review of the trial court's ruling on the motion for a directed verdict and of the sufficiency of the evidence to support the jury verdict involves basically the same analysis, we address these two issues together.[7]

## ANALYSIS

### I. Forcible Sexual Abuse

¶ 17 Hirschi asserts that we should overturn the trial court's ruling denying his motion for a directed verdict as well as the jury verdict itself because the evidence was insufficient to prove, beyond a reasonable doubt, that he committed forcible sexual abuse. In framing his appeal, Hirschi basically challenges each statutory element of the forcible sexual abuse offense, arguing that the State failed to prove beyond a reasonable doubt that Hirschi "(1) touched [A.K.'s] buttocks (2) with the requisite intent to cause

---

6. The State concedes that the trial court erred when it failed to rule on Hirschi's motion for a directed verdict at the close of the State's case, *see* Utah Code Ann. § 77-17-3 (2003); *State v. Smith*, 675 P.2d 521, 524 (Utah 1983), but argues that any error in this regard was harmless. As we conclude that there was insufficient evidence to support the forcible sexual abuse charge, Hirschi was harmed by the trial court's failure to rule at that time and by its ultimate ruling denying his motion regarding that charge. We need not dwell on this issue, however, as we reverse the forcible sexual abuse conviction on other grounds. Of course, any error in not timely ruling was harmless with regard to the assault conviction, as the jury only convicted Hirschi of simple assault, not aggravated assault. And Hirschi concedes his actions constituted simple assault.

Hirschi also argues that the trial court erred in not allowing into evidence A.K.'s written statement taken at the scene, even though the trial court allowed testimony regarding the statement,

and in not allowing testimony relating to A.K.'s interaction that night with one of the bartenders, who was her ex-boyfriend. We see no error in the trial court's rulings on these matters and decline to discuss them further. *See State v. Carter*, 776 P.2d 886, 889 (Utah 1989).

7. For a trial court to determine whether " 'some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt,' " *State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (quoting *State v. Dibello*, 780 P.2d 1221, 1225 (Utah 1989)), that court necessarily needs to determine if " 'the evidence [presented] is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.' " *State v. Hamilton*, 827 P.2d 232, 236 (Utah 1992) (quoting *State v. Booker*, 709 P.2d 342, 345 (Utah 1985)).

her substantial emotional or bodily pain[,] or with the intent to arouse or gratify ... the sexual desires of any person ... ([3]) without her consent." *See* Utah Code Ann. § 76–5–404(1). At oral argument, Hirschi more specifically asserted that no evidence in the record supports, beyond a reasonable doubt, a finding that Hirschi actually touched the skin of A.K.'s buttocks. Hirschi contended that it was "unclear from the record as to whether or not [the touching] occurred through clothing," and that there was no evidence of "actual skin on skin touching." The State, however, asserted at oral argument that there was evidence that Hirschi "touch[ed A.K.'s] buttocks under her panties." The State specifically stated that it believed A.K.'s testimony was that Hirschi stuck his "hand under ... her panties." Thus, the State contended that the evidence showed skin to skin contact. After thorough review of the record, however, we are unable to find any evidence directly showing, or even supporting an inference reasonably to be drawn from the evidence, that Hirschi touched the skin of A.K.'s buttocks. Accordingly, we conclude that there was insufficient evidence to support Hirschi's conviction of forcible sexual abuse.

■ ¶ 18 Utah Code section 76–5–404(1) provides that

[a] person commits forcible sexual abuse if the victim is 14 years of age or older and, under circumstances not amounting to rape, object rape, sodomy, or attempted rape or sodomy, ... touches the anus, buttocks, or any part of the genitals of another, or touches the breast of a female, or otherwise takes indecent liberties with another ... with intent to cause substan-

tial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person, without the consent of the other, regardless of the sex of any participant.

*Id.* § 76–5–404(1). "Where the defendant has touched a body part specified in the statute, the court inquires into the surrounding factual background only as it may be relevant to other elements of and defenses to the crime." *State v. Peters,* 796 P.2d 708, 711 (Utah Ct.App.1990) (discussing also that the "inquiry into all the facts surrounding the event in question [in an indecent liberties' analysis] contrasts with the simple inquiry suggested by a proscription against touching a specified body part").

¶ 19 Recently, in *State v. Jacobs,* 2006 UT App 356, 144 P.3d 226, this court was called upon to interpret the term "touching" as used in Utah Code section 76–5–404(1). We concluded that the touching contemplated by the Legislature with regard to the enumerated body parts was not a touching that occurred over a victim's clothing.[8] *See Jacobs,* 2006 UT App 356 at ¶¶ 7–9, 144 P.3d 226. The determinative issue in the instant case, then, is whether a jury could conclude, beyond a reasonable doubt, that Hirschi touched the skin of A.K.'s buttocks from her testimony that he stuck his hand down her pants and grabbed her buttocks while she was sitting on a barstool that had a back.

¶ 20 At trial, A.K.'s and Hirschi's testimony regarding the groping incident conflicted. As indicated, A.K. testified that Hirschi stuck his hand down her pants and grabbed her buttocks on two different occasions. A.K. did not, however, say his hand also went

8. In *State v. Jacobs,* however, we also noted that a person who touches a victim inappropriately over his or her clothing "[might] still be punished under the indecent liberties prong of the statute. when, considering all the surrounding circumstances, the conduct is comparable to the touching that is specifically prohibited." 2006 UT App 356, ¶ 9, 144 P.3d 226. *See also State v. Peters,* 796 P.2d 708, 711 & n. 5 (Utah Ct.App. 1990) (discussing that for an act to fall under "the catch-all 'taking indecent liberties'" language of the forcible sexual abuse statute, it "must be 'of equal magnitude o[r] gravity to those specifically set forth in the section,'" and outlining several factors on which a court must

focus when making such a determination) (citations omitted). Whether Hirschi's actions otherwise fell within the indecent liberties prong of the forcible sexual abuse statute was not raised at trial, so we do not address it here. *Cf. Jacobs,* 2006 UT App 356 at ¶ 10, 144 P.3d 226 (The appellate court explained that it did not need to conduct an indecent liberties analysis "because the State focused only on the touching prong at trial." And although the instruction regarding forcible sexual abuse listed both prongs, the trial court had clarified in a supplemental instruction to the jury "[that] 'indecent liberties' was not defined because it [was] not the theory of the case.").

down her panties or that he otherwise touched the skin of her buttocks.[9] As we have previously noted, someone who says their buttocks have been touched may very well mean that the touching occurred over clothing. *See id.* at ¶ 6. Hirschi only remembers flicking A.K.'s underwear, or giving her underwear a "little snuggie." Further, none of the witnesses at trial testified whether Hirschi actually touched the skin of A.K.'s buttocks, nor could they identify the style of underwear A.K. was wearing. Finally, the surveillance video is not helpful, as the pivotal conduct occurred off camera.

¶ 21 A.K. testified that she could not remember what type of underwear she was wearing, and all references in the trial transcript referred only to her underwear, to her underwear band, or to the top of her underwear. In fact, when Hirschi's attorney specifically asked A.K. whether her underwear was "V-shaped," A.K. replied: "I don't recall what underwear I was wearing that night." None of these references provide information from which reasonable minds could conclude, beyond a reasonable doubt, the particular style of underwear A.K. was wearing that evening. While it may seem a minor matter at first blush, the type of underwear A.K. was wearing is actually of critical importance, because without that information there is no way a jury could infer from the evidence that Hirschi touched the skin of A.K.'s buttocks.

¶ 22 If any of the witnesses had testified that A.K. was wearing the style of underwear known as a "thong" or "g-string," then the jury could readily have inferred—and concluded beyond a reasonable doubt—that when Hirschi stuck his hand down A.K.'s pants and groped her buttocks that he necessarily touched her bare skin, given that with the design of such styles of underwear there would be no fabric barrier over most of her buttocks. If A.K. was wearing more traditional underwear with fuller coverage, however, and Hirschi stuck his hand down her pants—but not under her underwear—he

most likely would not have touched the skin of her buttocks. This is especially true considering that she was sitting on a stool with a back, and the contact was for mere seconds. Thus, the absence of direct testimony about skin to skin contact, coupled with the lack of evidence showing what style of underwear A.K. was wearing, forecloses the only argument the State can make—that skin-to-skin contact was unavoidable because A.K. was wearing thong or g-string underwear.

¶ 23 Therefore, even accepting A.K.'s testimony as true and viewing it in a light most favorable to the verdict, without any direct evidence indicating skin-to-skin contact or that A.K. was wearing a thong or g-string, the evidence was "sufficiently inconclusive ... that reasonable minds must have entertained a reasonable doubt" that Hirschi actually touched the skin of her buttocks. *State v. Hamilton,* 827 P.2d 232, 236 (Utah 1992) (citation and internal quotation marks omitted). Accordingly, the trial court erred in denying Hirschi's motion for a directed verdict on the forcible sexual abuse charge, and the jury's verdict cannot stand, as there was insufficient evidence to support a conviction of forcible sexual abuse.[10]

## II.   Sexual Battery

■ ¶ 24 Hirschi requested relief in the form of "revers[ing] the jury verdict as to Count I, Forcible Sexual Abuse [or] remand[ing] to the Trial Court with direction to ... reduce ... Count I to the lesser include[d] offense of Sexual Battery." We are granting the latter requested relief because Hirschi's inappropriate actions clearly fall within the sexual battery statute, which criminalizes the "intentional[ ] touch[ing], *whether or not through clothing,* [of] the ... buttocks ... of another person, ... under circumstances ... likely [to] cause affront or alarm to the person touched." Utah Code Ann. § 76–9–702(3) (emphasis added). Because the jurors convicted Hirschi of forcible

---

9.  Despite the State's assertion that there was evidence that Hirschi stuck his hand "under [A.K.'s] panties" and grabbed or groped her buttocks, our review of the trial record shows that A.K. did not testify to this fact, and the record otherwise reveals no such evidence.

10.  As there was insufficient evidence to support a finding that Hirschi touched the bare skin of A.K.'s buttocks, there is no need to address the intent or consent elements of the crime.

sexual abuse, we conclude that they also "necessarily found every fact required for conviction of [the lesser] included offense" of sexual battery. *Id.* § 76–1–402(5) (2003). In rendering this verdict, the jury clearly accepted A.K.'s testimony that Hirschi stuck his hand down her pants and groped her buttocks, even though perhaps covered by her underwear. This demonstrates a touching of A.K.'s buttocks, whether or not through clothing, with the general intent to do so. *Compare id.* § 76–9–702(3) (requiring proof of the three elements identified above to convict a defendant of sexual battery), *with id.* § 76–5–404(1) (requiring proof that a person touched the buttocks of another "with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person, without the consent of the other" in order to convict a defendant of forcible sexual abuse). *See also Adams v. State,* 2005 UT 62, ¶ 21, 123 P.3d 400 (defining the general and specific intent requirements of the forcible sexual abuse statute); *State v. Sessions,* 645 P.2d 643, 646 (Utah 1982) (defining same and discussing that the lesser included offenses of lewdness and sexual battery have a general intent element). Furthermore, the jury must have found that any touching occurred without A.K.'s consent. And finally, Hirschi knew or should have known that groping A.K.'s buttocks would have caused affront or alarm given that she repeatedly told him to stop touching her.

¶ 25 Accordingly, when considering A.K.'s lack of consent and the fact that she repeatedly told Hirschi to stop touching her, it logically follows that his touching her buttocks would have occurred under circumstances likely to cause affront or alarm. Thus, the jury found every fact necessary for it to have concluded beyond a reasonable doubt that Hirschi committed sexual battery. We therefore remand to the trial court to set aside the forcible sexual abuse conviction, to enter in its place a conviction of sexual battery, and to take any necessary related actions with regard to sentencing. *See* Utah Code Ann. § 76–1–402(5) (2003).[11]

## CONCLUSION

¶ 26 We conclude that the evidence, even when viewed in a light most favorable to the verdict, was not sufficiently conclusive for the jury to find beyond a reasonable doubt that Hirschi touched the skin of A.K.'s buttocks. Accordingly, there was insufficient evidence to support the forcible sexual abuse conviction. We therefore remand to the trial court to set aside the conviction of forcible sexual abuse, to enter a conviction of sexual battery, and to make any sentencing adjustments it deems necessary.

¶ 27 WE CONCUR: JUDITH M. BILLINGS, Judge and CAROLYN B. McHUGH, Judge.

---

11. Utah Code section 76–1–402(5) provides that an appellate court may reverse or set aside a conviction if "there is insufficient evidence to support [it]," and instead enter a conviction for a lesser included offense, "without necessity of a new trial, if such relief is sought by the defendant[,]" and "the trier of fact necessarily found every fact required for conviction of that included offense." Utah Code Ann. § 76–1–402(5) (2003). *See, e.g., State v. Johnson,* 821 P.2d 1150, 1159–60 (Utah 1991) (setting aside attempted first degree murder conviction and directing trial court to enter conviction of attempted second degree murder, even though the defendant "technically ... did not seek to reduce the sentence ... to the lesser included offense on appeal, [as] the requirements of the statute [were] satisfied because [the defendant had] requested that the jury be given a lesser included instruction" and there was "ample evidence to support the verdict of guilt" for the lesser included offense); *State v. Bolsinger,* 699 P.2d 1214, 1221 (Utah 1985) ("hold[ing] that there [was] insufficient evidence to support a conviction for murder in the second degree ..., but that there [was] sufficient evidence to support a conviction ... of manslaughter[,]" and remanding with "directions to set aside the verdict and to enter a judgment of conviction for manslaughter without the necessity of a new trial and to sentence the defendant accordingly").