**2015 UT App 203**

## THE UTAH COURT OF APPEALS

SALT LAKE CITY,
Plaintiff and Appellee,
*v.*
BEATRIZ VALDEZ-SADLER,
Defendant and Appellant.

Opinion
No. 20140061-CA
Filed August 13, 2015

Third District Court, Salt Lake Department
The Honorable James T. Blanch
No. 131900025

Richard G. Sorenson, Attorney for Appellant

Padma Veeru-Collings and Ann P. Boyle, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Opinion, in which JUDGE
J. FREDERIC VOROS JR. concurred, with opinion. JUDGE MICHELE M.
CHRISTIANSEN dissented, with opinion.

DAVIS, Judge:

¶1      Beatriz Valdez-Sadler appeals her conviction for obstruction of justice, asserting that the trial court erred in denying her motion for directed verdict. We reverse her conviction.

## BACKGROUND

¶2      In December 2012, police officers attempted to serve a warrant for a probation violation on Valdez-Sadler's boyfriend (Boyfriend) at the apartment where he was living. When they knocked on the door of the apartment, Valdez-Sadler answered.

Valdez-Sadler let the officers into the apartment to look for Boyfriend, but he was not there. The officers discovered that Valdez-Sadler was the subject of an outstanding warrant, but they decided not to take her into custody.

¶3    Other officers returned several days later in another attempt to serve the warrant on Boyfriend. Valdez-Sadler answered the door, wearing only a jersey with no pants, and informed the officers that Boyfriend was not home. But this time, she refused to let the officers search the apartment. There is no evidence suggesting that the officers informed Valdez-Sadler of their reason for seeking Boyfriend either time they visited the apartment.

¶4    When Valdez-Sadler refused to let them in, the officers informed her that they were placing her under arrest pursuant to the outstanding warrant. Valdez-Sadler asked the officers to let her put on some pants before being taken to jail. While Valdez-Sadler went into the bedroom to retrieve her pants, the officers checked the rest of the apartment to be sure that it was secure. In doing so, they discovered Boyfriend and placed him under arrest.

¶5    Valdez-Sadler was charged with obstruction of justice as a class A misdemeanor. *See* Utah Code Ann. § 76-8-306(1), (3)(c) (LexisNexis 2012). A jury trial was held on October 28, 2013. After Salt Lake City (the City) had presented its case, Valdez-Sadler moved for a directed verdict. The trial court denied the motion, and the jury found Valdez-Sadler guilty. She now appeals.

ISSUE AND STANDARD OF REVIEW

¶6    Valdez-Sadler asserts that the trial court erred in denying her motion for directed verdict. We review the trial court's

denial of the motion for directed verdict for correctness. *State v. Hirschi*, 2007 UT App 255, ¶ 15, 167 P.3d 503.

ANALYSIS

¶7     Valdez-Sadler argues that the trial court should have granted her motion for directed verdict because the City failed to present evidence sufficient for the jury to find that Boyfriend's conduct constituted a criminal offense as defined by the obstruction of justice statute.[1] A person commits obstruction of justice when she engages in one of several enumerated activities, such as "harbor[ing] or conceal[ing] a person," and acts "with intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding *conduct that constitutes a criminal offense*." Utah Code Ann. § 76-8-306(1) (emphasis added). The statute specifically defines "conduct that constitutes a criminal offense" as "conduct that would be punishable as a crime," including "any violation of a criminal statute or ordinance." *Id.* § 76-8-306(2)(a).

¶8     The City asserts that we should consider the underlying felony for which Boyfriend had been placed on probation to be the "conduct that constitutes a criminal offense," not the probation violation itself. Using this approach, Valdez-Sadler's actions in concealing Boyfriend from police would clearly fall within the purview of the statute, assuming that the other

---

1. Valdez-Sadler alternatively argues that the City failed to present sufficient evidence of her intent because it did not establish that she knew why the officers sought Boyfriend. However, because we reverse Valdez-Sadler's conviction on the ground that a probation violation is not a criminal offense for purposes of the obstruction of justice statute, we need not address this alternative argument.

elements of the statute were also satisfied. However, we are not convinced by the City's argument. Boyfriend's probation violation may ultimately result in his serving a prison sentence for the underlying felony that he might otherwise have avoided. *See id.* § 77-18-1(12)(e)(ii) (Supp. 2014) ("Upon a finding that the defendant violated the conditions of probation, the court may order the probation revoked, modified, continued, or that the entire probation term commence anew."). But Valdez-Sadler's actions did not "hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment" of Boyfriend regarding the underlying felony he committed, because he had already been apprehended, convicted, and sentenced for that crime. *See id.* § 76-8-306(1) (2012). Thus, we agree with Valdez-Sadler that the conduct for which police sought Boyfriend was his probation violation, not his commission of the underlying felony.

¶9     While violating probation carries consequences, *see id.* § 77-18-1(12)(e)(ii) (Supp. 2014), it is not separately punishable as a crime in Utah. In fact, recognizing this, the Utah Legislature has made "[o]bstructing service of a Board of Pardons' warrant or a probationer order to show cause" a separate crime from obstruction of justice. *Id.* § 76-8-306.5 (2012); *see also* Recording of Utah House Floor Debates, 57th Leg., Gen. Sess. (Feb. 6, 2007) (statements of Rep. Rebecca D. Lockhart) (indicating the belief that the obstruction of justice statute did not apply to obstruction of service of Board of Pardons' warrants or orders to show cause for probation violations because violations of probation or parole are not separately punishable crimes). Because the police sought Boyfriend for a probation violation and violating probation is not punishable as a crime, the City failed to present evidence from which the jury could have determined that Valdez-Sadler "hinder[ed], delay[ed], or prevent[ed] the investigation, apprehension, prosecution, conviction, or punishment" of Boyfriend "regarding conduct that constitutes a criminal offense." *See* Utah Code Ann. § 76-8-306(1).

CONCLUSION

¶10 Because the City failed to present evidence that Boyfriend's conduct constituted a criminal offense, the trial court erred in denying Valdez-Sadler's motion for directed verdict. We therefore reverse Valdez-Sadler's conviction for obstruction of justice.

———————

VOROS, Judge (concurring):

¶11 I write separately to explain why I believe the text of the relevant statutes requires reversal of Valdez-Sadler's conviction. I concur in the lead opinion except insofar as it may be inconsistent with this opinion.

¶12 The obstruction of justice statute makes it a crime to harbor or conceal a person "with intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense." Utah Code Ann. § 76-8-306(1)(e) (LexisNexis 2012). This provision does not mention probationers or parolees. Nevertheless, read in isolation, this statute could, in my estimation, reasonably apply to Valdez-Sadler's conduct here.

¶13 However, we do not read statutes in isolation. Rather, "we read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *State v. Barrett*, 2005 UT 88, ¶ 29, 127 P.3d 682 (citation and internal quotation marks omitted). In addition, "we interpret[] statutes to give meaning to all parts, and avoid[] rendering portions of the statute superfluous." *State v. Watkins*, 2013 UT 28, ¶ 23, 309 P.3d 209 (alterations in original) (citation and internal quotation marks omitted). Finally, "[w]hen two statutory provisions appear to conflict, the more specific provision will govern over the more

general provision." *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 216 (Utah 1984).

¶14    These canons of construction require us to read the obstruction of justice statute, section 76-8-306, in harmony with the following section, section 76-8-306.5. Section 76-8-306.5 applies specifically to harboring or concealing parolees and probationers. In pertinent part, section 76-8-306.5 makes it a crime to harbor or conceal a probationer with knowledge that "a court has issued an order to show cause regarding a defendant's violation of the terms of probation." Utah Code Ann. § 76-8-306.5 (LexisNexis 2012). Accordingly, applying section 76-8-306 rather than section 76-8-306.5 to harboring or concealing probationers would violate two of the aforementioned canons. It would render section 76-8-306.5 superfluous, and it would allow the more general provision to govern the more specific. Accordingly, I do not read section 76-8-306 to apply to harboring or concealing probationers.[2]

¶15    By its own terms, section 76-8-306.5 applies to the typical situation where "a court has issued an order to show cause regarding a defendant's violation of the terms of probation." *Id.* § 76-8-306.5. And the record here does not indicate that a court issued an order to show cause on Boyfriend. But our reading of the statutory scheme should not be controlled by the fact that the present case arose in an atypical manner.

---

2. Admittedly, the legislature might have made its intent explicit, as it did when it stated that the obstruction statute "does not apply to harboring a youth offender, which is governed by Section 62A-7-402." Utah Code Ann. § 76-8-306(5) (LexisNexis 2012). But neither did the legislature make a contrary intent explicit, leaving us to construe the statutes according to our usual canons of construction.

¶16   In sum, because section 76-8-306.5 explicitly applies to harboring or concealing probationers, section 76-8-306 does not.[3]

———————

CHRISTIANSEN, Judge (dissenting):

¶17   I respectfully dissent because I disagree with the majority's conclusion that the City failed to present evidence sufficient to convict Valdez-Sadler of obstruction of justice. In my view, the plain language of the obstruction-of-justice statute is unambiguous, and the actions taken by Valdez-Sadler clearly fall within the statute's reach. Accordingly, I would hold that the trial court correctly denied Valdez-Sadler's motion for directed verdict in this case.

¶18   The obstruction-of-justice statute is broadly worded and criminalizes "harbor[ing] or conceal[ing] a person" or

———————

3. This conclusion rests on my reading of the statutory text, not the legislative history. Comments made by legislators or others in the course of the legislative process matter far less than the text of the legislation itself. "Any suppositions about what the legislature may have intended cannot properly override what it actually did." *State v. Clark*, 2011 UT 23, ¶ 17, 251 P.3d 829. We are, after all, "governed by laws, not by the intentions of legislators." *Conroy v. Aniskoff,* 507 U.S. 511, 519 (1993) (Scalia, J., concurring). In any event,"[t]he best evidence of the true intent and purpose of the Legislature in enacting the Act is the plain language of the Act." *State v. Hunt*, 906 P.2d 311, 312 (Utah 1995). Consequently, "[i]n the game of statutory interpretation, statutory language is the ultimate trump card, and the remarks of sponsors of legislation are authoritative only to the extent that they are compatible with the plain language" of the statute. *United States v. Czubinski*, 106 F.3d 1069, 1078 (1st Cir. 1997) (citation and internal quotation marks omitted).

"provid[ing] false information regarding a suspect" with the intent to "hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense." Utah Code Ann. § 76-8-306(1) (LexisNexis 2012). I disagree with the lead opinion's conclusion that Valdez-Sadler's lies to police about Boyfriend's whereabouts fall outside the ambit of the statute. Specifically, I cannot read the plain language of the statute in such a way as to support the lead opinion's conclusion that, because Boyfriend "had already been apprehended, convicted, and sentenced" for the felony underlying his probation, "Valdez-Sadler's actions did not 'hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment' of Boyfriend regarding the underlying felony." *Supra* ¶ 8.

¶19    The lead opinion appears to interpret the word "regarding" as synonymous with "for." The lead opinion's analysis hinges on the fact that "the conduct for which police sought Boyfriend was his probation violation, not his commission of the underlying felony." *Supra* ¶ 8. And the lead opinion's conclusion is couched in terms of official action against Boyfriend for commission of a criminal offense: "the City failed to present evidence from which the jury could have determined that Valdez-Sadler 'hinder[ed], delay[ed], or prevent[ed] the investigation, apprehension, prosecution, conviction, or punishment' of Boyfriend 'regarding conduct that constitutes a criminal offense.'" *Supra* ¶ 9.

¶20    However, when interpreting a statute, we must presume "that the legislature used each term advisedly according to its ordinary and usually accepted meaning." *State v. Berriel*, 2013 UT 19, ¶ 13, 299 P.3d 1133 (citation and internal quotation marks omitted). The ordinary and usually accepted meaning of the word "regarding" is "relating to" or "concerning." *See* Merriam-Webster Online, http://www.merriam-webster.com/dictionary/

regarding (last visited Aug. 6, 2015); *Webster's Third New Int'l Dictionary* 1911 (1993). In my view, the obstruction-of-justice statute should therefore be read to criminalize acts that intentionally impede official action "relating to" or "concerning" conduct that constitutes a criminal offense. Nothing in the statute limits this consideration to conduct for which the criminal actor has not yet been prosecuted or punished. Thus, although Boyfriend may have been sought due to a violation of his probation, his apprehension by police (and whatever punishment is imposed upon him as a result) involves official action regarding—i.e., relating to or concerning—the underlying criminal conduct for which he had been sentenced and placed on probation.

¶21    I also cannot agree with Judge Voros's conclusion that the existence of Utah Code section 76-8-306.5 requires us to exclude Valdez-Sadler's conduct from the reach of section 76-8-306. Section 76-8-306.5 criminalizes harboring or concealing a probationer if the actor knows "that a court has issued an order to show cause regarding [that person's] violation of the terms of probation." Utah Code Ann. § 76-8-306.5(1) (LexisNexis 2012). In my view, reading section 76-8-306 to encompass Valdez-Sadler's conduct would neither render section 76-8-306.5 superfluous nor create a conflict between the sections.[4] The latter statute applies

---

4. I note that, while Valdez-Sadler discussed section 76-8-306.5 in the context of explaining why the legislative history of that section should inform our consideration of section 76-8-306, Valdez-Sadler did not argue that the existence of section 76-8-306.5 precluded her conviction under section 76-8-306. I would not reverse the trial court on the basis of an argument not raised by the appellant's opening brief.

Moreover, I do not think it necessary to guess at the legislature's intent in enacting section 76-8-306. As Judge Voros points out, "[t]he best evidence of the true intent and purpose of

(continued…)

when the actor knows that an order to show cause has been issued while the former applies when the actor does not. Section 76-8-306.5 thus imposes a different penalty for actively assisting a probationer to evade arrest with the knowledge that the probationer is being sought for a probation violation. *Compare id.* § 76-8-306(3), *with id.* § 76-8-306.5. Accordingly, in my view, the combined function of these statutes is to punish actors differently depending on their level of knowledge.

¶22    It is true that an actor could conceivably be convicted under both statutes. Utah law recognizes that "the same act of a defendant . . . [may] establish offenses which may be punished in different ways under difference provisions of [the criminal

_____

(…continued)

the Legislature in enacting [a statute] is the plain language of the [statute]." *State v. Hunt*, 906 P.2d 311, 312 (Utah 1995). When the "statutory language is plain and unambiguous, we do not look beyond the language's plain meaning to divine legislative intent." *Horton v. Royal Order of the Sun*, 821 P.2d 1167, 1168 (Utah 1991); *see also, e.g.*, *Allisen v. American Legion Post No. 134*, 763 P.2d 806, 809 (Utah 1988); *Graves v. North E. Servs., Inc.*, 2015 UT 28, ¶ 67, 345 P.3d 619 (noting that "[t]he governing law is defined not by our abstract sense of legislative purpose, but by the statutory text that survived the constitutional process of bicameralism and presentment"); *Gressman v. State*, 2013 UT 63, ¶¶ 69–70, 323 P.3d 998 (Lee, J., dissenting) (cautioning that legislators do not necessarily share a unified intent when they enact a statute); *D.A. v. D.H.*, 2014 UT App 138, ¶ 18 n.3, 329 P.3d 828 (noting the "potential pitfalls in attempting to divine the intent of a legislative body from a hand-picked selection of arguably favorable comments" made by bill sponsors). Because I conclude that the language of section 76-8-306 is plain and unambiguous, I would decline Valdez-Sadler's invitation to divine the legislature's intent in enacting 76-8-306.

code.]" *See* Utah Code Ann. § 76-1-402(1) (LexisNexis 2012). In such cases, the defendant may not be punished under all of the implicated provisions, *see id.*, but the overlap between offenses does not act as a bar to charges or even convictions for overlapping offenses. Rather, whatever convictions are ultimately found by the jury are simply subject to merger or related doctrines. *See State v. Lee*, 2006 UT 5, ¶¶ 28–32, 128 P.3d 1179; *State v. Shondel*, 453 P.2d 146, 147–48 (Utah 1969). Thus, I do not believe that section 76-8-306 must be interpreted to exclude the harboring of wanted probationers merely because section 76-8-306.5 could criminalize the same conduct (albeit with a heightened mens rea) in a particular case.

¶23    I conclude that the plain language of section 76-8-306, the obstruction-of-justice statute, unambiguously encompasses Valdez-Sadler's lies about Boyfriend's whereabouts to the police seeking to apprehend him regarding his underlying conviction. Because I also conclude that the evidence was sufficient for a jury to infer that Valdez-Sadler acted with the intent to hinder Boyfriend's apprehension, I would affirm the trial court's denial of Valdez-Sadler's motion for directed verdict.

———————