2001 UT 30

STATE of Utah, Plaintiff and Appellee,

v.

Tyrone T. BOYD, Defendant
and Appellant.

No. 981336.

Supreme Court of Utah.

March 27, 2001.

Mark L. Shurtleff, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen., Salt Lake City, W. Brent Langston, St. George, for plaintiff.

Kenneth L. Combs, St. George, for defendant.

DURRANT, Justice:

¶ 1 The State charged Tyrone Boyd in an information with rape, a first degree felony, and possession or consumption of an alcoholic beverage by a minor, a class B misdemeanor. Boyd pleaded guilty to the misdemeanor charge, and a jury convicted him of rape. He appeals that conviction. We affirm.

## BACKGROUND

¶ 2 " 'In reviewing a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict. We recite the facts accordingly.' " *State v. Hopkins*, 1999 UT 98, ¶ 2, 989 P.2d 1065 (quoting *State v. Hamilton*, 827 P.2d 232, 233–34 (Utah 1992)). On the evening of August 15, 1999, S.B., a fifteen-year-old girl from Santa Clara, Utah, went to what was planned as a small, overnight, "back-to-school" party at Baker's Dam, near St. George, Utah. S.B. went to the party with her stepsister and a friend. While initially only about ten people were present, the party quickly grew to somewhere between 35 and 180 people. The group congregated around a bonfire in a basin near the dam.

¶ 3 Boyd arrived at the party sometime after S.B. and introduced himself to several partygoers, including S.B., as "Freakazoid." S.B. had never met him before, and neither had any of the other partygoers who testified for the State. Boyd came with two other young men, who were introduced as "Psycho" and "Devil Man." Shortly after his arrival, Boyd made several attempts to kiss various girls at the party; however, his efforts were rebuffed, as one girl stated, because he made her feel "uncomfortable." He also attempted to start a fight with one of the other partygoers and danced around the campfire while chanting unintelligibly.

¶ 4 Many people at the party, including both S.B. and Boyd, were drinking, and loud music was playing. The music was played at such a high volume that even in close conversation the partygoers had to yell to be heard. Some time between 11:00 and 12:00 that night, several partygoers reported that police officers had arrived at the scene of the party. Due to the rough terrain, the officers were unable to actually drive their vehicles down into the basin where the party was held, and, while not entirely clear from the record, it appears that they remained some distance away. Many people drinking at the party were underage, and, on learning of the police presence, they fled. In this confusion, Boyd grabbed S.B. and dragged her into a wooded area. At first, S.B. thought it was one of her friends helping her to get away from the

police. However, when she realized it was Boyd, she told him "no" and asked him to let her go. Instead, Boyd threw her on the ground, some distance from the bonfire. Boyd then held her hands above her head with one hand while she lay on her back, pulled down both his pants and hers with his free hand, and raped her. She screamed during the ordeal, but no one came to her aid.

¶ 5 One of Boyd's friends happened to be walking through a wooded area near Boyd and S.B. during the course of the rape. Boyd asked him for a condom. Boyd then let S.B. go on the condition that she would come back and told her, "If you don't, I'm going to send the devil after you." S.B. ran back to the bonfire and found one of her friends. She asked the friend to take her to the hospital because she had just been raped. Shortly afterward, another young man overheard Boyd tell a friend, in crude terms, that he had just had sexual intercourse. Several witnesses then observed Boyd and a couple of his friends again dancing around the campfire while chanting unintelligibly.

¶ 6 S.B. was driven to a friend's house and, shortly afterward, was taken to a local hospital. She arrived sometime between 2:30 and 3:00 in the morning and was examined by Dr. Ronald Larsen. Dr. Larsen described S.B. as emotionally distraught, "a bit disheveled," and "very tearful." She had linear streaks on her back that Dr. Larsen felt were "consistent with a struggle of some kind." In S.B.'s perineal area, Dr. Larsen found "dirt and some wood chips and leaves that [were] still sticking to her skin in that area." Accordingly, he noted, "There had to be some kind of a struggle or movement pushing leaves and dirt up into that area." He determined this was consistent with a rape scenario. Additionally, S.B. had bruising on her external genitalia, "as if there had been an attempt to penetrate the vagina." The attempt was "forceful," "more than just a casual attempt," although the hymen remained intact. S.B. was agitated and did not wish to allow a full internal exam. Dr. Larsen felt it was acceptable not to perform the full internal exam because there did not appear to have been penetration beyond the hymen, and only took swabs for semen analysis.

¶ 7 Police Officer Ron Edwards interviewed S.B. at the hospital. He found her distraught, confused, and in trauma. She had bruises on her arms and back. Officer Edwards showed S.B. a photo line-up with pictures of Boyd and five other men. She identified Boyd as her assailant. He was arrested shortly afterward.

¶ 8 At trial, Dr. Larsen testified as a witness for the prosecution. On cross-examination, he stated that he believed S.B. was a virgin. S.B testified that Boyd "took something from me that I can't ever take back." Responding to these statements, Boyd attempted to introduce evidence that S.B. had also engaged in sexual intercourse with another young man on the evening of the rape, both to impeach the witnesses and to show that there was a second potential source for the physical evidence of S.B.'s condition. The trial court refused to admit the evidence, finding it was barred by rule 412 of the Utah Rules of Evidence. The jury found Boyd guilty of rape.

¶ 9 Following his conviction, Boyd filed several motions, including a motion for a new trial based on newly discovered evidence. Boyd's counsel submitted an affidavit to the court in which he swore that, following the trial, he had received a telephone call from an attorney in Salt Lake City informing him that S.B. had told several individuals that Boyd had not raped her, but rather the two had engaged in consensual intercourse.

¶ 10 At the sentencing hearing, Boyd's counsel elaborated on this evidence. The Salt Lake attorney "had received a phone call from a lady who had had a conversation with another lady who was told by the victim that she had not in fact been raped." Boyd's counsel spoke with the woman, identified only as Mrs. Peterson, who had spoken with the Salt Lake attorney. She confirmed the statement of the Salt Lake attorney. Boyd's counsel then spoke with the woman who allegedly told Mrs. Peterson that S.B. admitted she had not been raped. The woman denied this, stating, "No. No. It's just wishful thinking. I read it in the newspaper. I knew right off. I had this intuition he was not

guilty, except it was hopeful wishful thinking." Boyd's counsel then spoke with Mrs. Peterson again, who claimed the woman was lying. Because the woman who had allegedly heard S.B. state that she was not raped would not verify that statement, Boyd rested his motion on his counsel's affidavit. The trial court denied the motion and sentenced Boyd for the rape of S.B. Boyd appeals.

## DISCUSSION

¶ 11 Boyd raises numerous issues on appeal. He contends (1) the evidence was insufficient to support the jury's verdict; (2) the absence of a court reporter at trial was plain error; (3) the trial court improperly allowed testimony regarding his and his friend's nicknames; (4) the trial court improperly admitted evidence that he and his friends were dancing and chanting around a campfire on the night of the rape; (5) the trial court erroneously denied his motion for a new trial; (6) the trial court erred in denying his motion for judgment notwithstanding the verdict; (7) the trial court erred in denying his motion for conviction of lower degree of offense; (8) the trial court erred in refusing to allow him to present evidence of S.B.'s past sexual conduct; (9) the trial court erred in not allowing him to proffer evidence of S.B.'s past sexual conduct for the appellate record; and (10) the trial court coerced the jury into reaching a verdict. We address each of these contentions.

## I. SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE JURY'S VERDICT

¶ 12 The evidence of rape presented to the jury at trial included S.B.'s testimony of the rape and physical evidence of the rape. It further included testimony regarding S.B.'s emotional state on the evening of the rape, as witnessed by several of her friends, Dr. Larsen, and Officer Edwards. However, Boyd contends the evidence was insufficient to support the jury's verdict because (1) some of the State's witnesses gave contradictory testimony and (2) S.B.'s version of how the rape occurred was unbelievable, especially when compared with Boyd's own testimony and

that of his friend, who witnessed the encounter between Boyd and S.B.

¶ 13 To succeed on this claim, Boyd " 'must marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict.' " *Hopkins*, 1999 UT 98, ¶ 14, 989 P.2d 1065 (quoting *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 799 (Utah 1991)). We will "overturn a conviction for insufficient evidence when it is apparent that there is not sufficient competent evidence as to each element of the crime charged for the fact-finder to find, beyond a reasonable doubt, that the defendant committed the crime." *State v. Layman*, 1999 UT 79, ¶ 12, 985 P.2d 911.

¶ 14 First, Boyd contends the evidence was insufficient to support the jury's verdict because some of the State's witnesses gave contradictory testimony. We find no merit in this. When reviewing a trial wherein conflicting, competent evidence was presented, we simply "assume that the jury believed the evidence supporting the verdict." *State v. Dunn*, 850 P.2d 1201, 1213 (Utah 1993). Accordingly, "[t]he existence of contradictory evidence or of conflicting inferences does not warrant disturbing the jury's verdict." *State v. Howell*, 649 P.2d 91, 97 (Utah 1982).

¶ 15 Second, Boyd contends the evidence was insufficient to support the jury's verdict because portions of S.B.'s account of the rape were unbelievable. Boyd characterizes as unbelievable S.B.'s testimony that (1) she could not remember how far away from the fire Boyd dragged her, (2) she screamed and struggled but no one heard her, and (3) Boyd was able to lower both his pants and her own while, at the same time, straddling her and pinning her hands above her head.

¶ 16 Essentially, Boyd is questioning S.B.'s credibility as a witness. However, we do not sit as a second trier of fact: " 'It is the *exclusive function of the jury* to weigh the evidence and *to determine the credibility of the witnesses.*' So long as there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime can reasonably be made,

our inquiry stops." *State v. Booker*, 709 P.2d 342, 345 (Utah 1985) (emphasis added) (quoting *State v. Lamm*, 606 P.2d 229, 231 (Utah 1980)). The jury was presented with competent evidence of each element of rape. As noted above, where this is the case, we "assume that the jury believed the evidence supporting the verdict." *Dunn*, 850 P.2d at 1213. Under the facts presented in this case, there is no reason to second-guess this belief. Therefore, we find that the evidence was sufficient to support the jury's verdict.[1]

## II. ABSENCE OF A COURT REPORTER AT TRIAL

■ ¶ 17 The official verbatim record of Boyd's trial was maintained by a video recording system. *See* Utah Code Jud.Admin.R. 4–201(1)(A). Boyd argues that the trial court erred in failing to also provide a court reporter as required by rule 4–201(1)(B) of the Utah Code of Judicial Administration for trials in first degree felonies. We agree; however, we find that the error was harmless in this case.

¶ 18 Under the Utah Code of Judicial Administration, a video recording system is to be used to maintain the official verbatim record in a district court proceeding, *see id.* 4–201(1)(A), unless the case volume of a particular courtroom does not justify the cost of installing a video recording system. In that case, an audio recording system is to be used to maintain the official verbatim record. *See id.* 4–201(1)(D)(i). However, rule 4–201(1)(B) provides that, in computer integrated courtrooms,[2] "[a]n official court reporter or approved substitute court reporter shall maintain the official verbatim record ... using real time reporting methods" during certain proceedings, including all "trial proceedings in first degree felonies." Thus, assuming Boyd's trial took place in a comput-

er integrated courtroom,[3] an official court reporter should have maintained the official verbatim record using real time reporting methods.

¶ 19 Rule 4–201(H) provides, "The use of a technology other than the presumed technology shall not form the basis of an issue on appeal." The State argues that this rule prohibits Boyd's appeal of the trial court's failure to provide a court reporter. We disagree.

¶ 20 As we read rule 4–201(1)(B), it imposes two distinct requirements on first degree felony trial proceedings held in computer integrated courtrooms. First, an official court reporter or approved substitute reporter must maintain the official verbatim record. Second, the reporter must maintain the record using real time recording methods. Thus, the second requirement sets forth the presumed technology to be used to maintain the record, and an appeal of the trial court's failure to comply with this requirement would be barred by rule 4–201(H). However, Boyd appeals only the trial court's failure to meet the first requirement, which does not address the presumed technology used in maintaining the record. Thus, rule 4–201(H) does not bar Boyd's appeal of the trial court's failure to provide a court reporter.

■ ¶ 21 Having determined that the trial court erred in failing to provide a court reporter and that Boyd's appeal of the issue is not prohibited by the Utah Code of Judicial Administration, we now address the issue of whether this error requires reversal of Boyd's conviction. As Boyd did not raise the issue at trial, we review the trial court's decision for plain error. Accordingly, to prevail, Boyd must show that the error should have been obvious to the trial court and that

---

1. This finding also disposes of Boyd's claim that the trial court erroneously denied his motion for judgment notwithstanding the verdict due to the insufficiency of the evidence. *See, e.g., State v. James*, 819 P.2d 781, 784–85 (Utah 1991) (applying the same standard to such a claim as to a direct claim of insufficient evidence).

2. Computer integrated courtrooms enable court reporters to "create ... records through computer-aided transcription ... that are instantaneously sent to computers at the judge's bench, on the

attorney's tables, and [at] other strategic courtroom locations." Eric Leeson, *Utah Tries Video*, 10 Gov't Tech. 20, *at* http://www.govtech.net/publications/gt/1996/apr/jandtapr/ jandtapr.phtml.

3. It is unclear from the record whether the trial actually took place in a computer integrated courtroom. For purposes of our analysis, we will assume it did.

"the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *Dunn,* 850 P.2d at 1208–09 (footnote omitted). Even assuming the error should have been obvious to the trial court, we find it was not harmful. While Boyd cites numerous gaps in the record where what was said at trial was inaudible, each gap constituted only a few words, usually only one or two. Further, the majority of these gaps were later clarified in a stipulated record supplement. Of those that were not clarified, most were statements of either the court or counsel. Only ten statements by witnesses were inaudible. Of these, six dealt with the location of the party. The remaining four missing statements were not necessary to understand the response. Additionally, Boyd could have proffered the substance of the inaudible statements for the appellate record. Therefore, we find that the court's failure to provide a court reporter was not harmful error.

### III. EVIDENCE OF NICKNAMES, CHANTS, AND DANCES

¶ 22 At trial, numerous witnesses identified Boyd by the nickname he used in referring to himself on the night of the rape, "Freakazoid." Some witnesses also referred to Boyd's friends, Jeremy Miller and Mark Brown, by their nicknames, "Psycho" and "Devil Man." Further, several witnesses testified that, on the evening of the rape, Boyd and his friends engaged in "weird" dancing around a campfire while reciting "a devil kind of chant." Boyd contends the trial court committed reversible error in allowing such testimony as it was irrelevant and its prejudicial value substantially outweighed its probative value. We disagree.

¶ 23 Evidence is only admissible if it is relevant. *See* Utah R.Evid. 402. Rule 401 of the Utah Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." The trial court ruled that the evidence of chants, dances, and nicknames was relevant and that its probative value was not substantially outweighed by its prejudicial value. Our review of these rulings is limited. "Trial courts have wide latitude in making determinations of relevance, probativeness, and prejudice under rules 401 and 403." *State v. Real Property at 633 E. 640 N.,* 942 P.2d 925, 929 (Utah 1997).

¶ 24 In *State v. Daniels,* 584 P.2d 880 (Utah 1978), the defendant was convicted of theft for stealing a car. On appeal, the defendant claimed the trial court erred in allowing evidence that he had siphoned gas to fuel the stolen vehicle. We affirmed his conviction, stating that where "evidence has relevancy to explain the circumstances surrounding the instant crime, it is admissible for that purpose...." *Id.* at 882. Likewise, in *State v. Pierce,* 722 P.2d 780, 782 (Utah 1986), we held that, in a prosecution for theft by securing and retaining stolen property, evidence showing defendant paid for the stolen property with marijuana was not unfairly prejudicial as it "was relevant to show the general circumstances surrounding defendant's purchase, receipt, and retention of the stolen property." *Id.* at 782; *see also State v. Johnson,* 784 P.2d 1135, 1141 (Utah 1989) (quoting *Daniels,* 584 P.2d at 882); *State v. Morgan,* 813 P.2d 1207, 1210 n. 4 (Utah Ct.App.1991) (noting that "the prosecutor is entitled to paint a factual picture of the context in which the events in question transpired"). In this case, the evidence of nicknames, chants, and dances was not remote in either time or place. Rather, it provided background for the rape of S.B. Accordingly, the trial court did not abuse its discretion in admitting this evidence.

### IV. BOYD'S MOTION FOR A NEW TRIAL

¶ 25 Following the trial, Boyd's counsel received a telephone call from a Salt Lake attorney who informed him that S.B. had told several people that Boyd had not raped her. Boyd moved for a new trial.

After filing the motion, Boyd's counsel spoke with the source of the Salt Lake attorney's information, a woman named Mrs. Peterson. Mrs. Peterson told Boyd's counsel that another woman, unidentified in the record, told her that S.B. had admitted that Boyd had not raped her. However, when Boyd's counsel spoke with the unidentified woman, she denied having made that statement. The trial court then denied the motion for a new trial for absence of a supporting factual basis.

¶ 26 Boyd argues that the trial court should have granted his motion for a new trial for two reasons: first, this newly discovered evidence compelled a new trial, and, second, the evidence was insufficient to support the jury's verdict. Having already determined that the evidence was sufficient to support the jury's verdict, we address only Boyd's first contention.

¶ 27 "[I]f a trial court has applied the correct legal standard, it has broad discretion in granting or denying a motion for a new trial." *State v. Martin*, 1999 UT 72, ¶ 5, 984 P.2d 975. "The legal standard to be applied when considering a motion for a new trial based on newly-discovered evidence is that the moving party must show that the evidence satisfies the following factors: (i) it could not, with reasonable diligence, have been discovered and produced at the trial; (ii) it is not merely cumulative; and (iii) it must make a different result probable on retrial." *Id.* We find, and the parties do not dispute, that the trial court applied the correct legal standard in this case. Therefore, we review its decision for an abuse of discretion.

¶ 28 None of the potential witnesses noted in the affidavit had any personal knowledge of the rape. At best, the new revelations could serve only to impeach S.B.'s testimony. As a general rule, newly discovered evidence does not warrant a new trial where its only use is impeachment. *State v. Worthen*, 765 P.2d 839, 851 (Utah 1988); *State v. Hawkins*, 81 Utah 16, 32, 16 P.2d 713, 719 (1932).

¶ 29 Even were we to disregard this rule, we would have no occasion to reverse the trial court's ruling. Boyd's evidence from

Mrs. Peterson was double-hearsay. Further, the unidentified woman who allegedly told Mrs. Peterson that S.B. had confessed Boyd did not rape her denied having made that statement. In these circumstances we cannot say that Boyd offered any evidence that would "make a different result probable on retrial." *Martin*, 1999 UT 72, ¶ 5, 984 P.2d 975. Therefore, we find that the trial court did not abuse its discretion in denying his motion for a new trial.

## V. CONVICTION OF LOWER DEGREE OF OFFENSE

¶ 30 Boyd contends the trial court erred in overruling his motion for conviction of lower degree of offense under section 76–3–402(1) of the Utah Code. That section states, in relevant part, as follows:

> If the court, having regard to the nature and circumstances of the offense of which the defendant was found guilty and to the history and character of the defendant, concludes it would be unduly harsh to record the conviction as being for that degree of offense established by statute and to sentence the defendant to an alternative normally applicable to that offense, the court may unless otherwise specifically provided by law enter a judgment of conviction for the next lower degree of offense and impose sentence accordingly.

Utah Code Ann. § 76–3–402(1) (1995).

¶ 31 We give deference to the trial court when reviewing issues of sentencing:

> We traditionally afford the trial court wide latitude and discretion in sentencing.... "An appellate court will set aside a sentence imposed by the trial court if the sentence represents an abuse of discretion." ... Sentencing requires such discretion because it "necessarily reflects the personal judgment of the court." ... Thus, a sentence imposed by the trial court should be overturned only when it is inherently unfair or clearly excessive.

*State v. Woodland*, 945 P.2d 665, 671 (Utah 1997) (quoting *State v. Gibbons*, 779 P.2d 1133, 1135 (Utah 1989)) (other citations omitted).

¶ 32 In support of his contention, Boyd notes that both he and the victim were drinking, there was no substantial evidence of violence, the evidence at trial was contradictory, and he had no criminal record. The trial court was, of course, aware of all these points, having presided over the trial itself and most of the hearings connected with the prosecution. Further, the trial court also had before it (1) the fact that Boyd never even alleged that drinking affected his behavior, (2) the physical evidence consistent with the rape, (3) evidence of S.B.'s emotional reaction to the rape, and (4) the testimony of S.B.'s mother who chronicled the continuing and serious emotional problems her daughter suffered in the wake of the rape. In the circumstances of this case, we find no basis for concluding that the trial court abused its discretion in failing to "enter a judgment of conviction for the next lower degree of offense."

## VII. EVIDENCE OF S.B.'S PAST SEXUAL CONDUCT

¶ 33 At trial, S.B. testified that Boyd "took something from me that I can't ever take back," and Dr. Larsen testified that he believed S.B. was a virgin at the time of the rape. Boyd attempted to introduce testimonial evidence that S.B. had engaged in sexual intercourse with another young man on the evening of the rape prior to her encounter with Boyd. This evidence was intended to impeach both S.B. and Dr. Larsen and to show that there was a second potential source for the physical evidence of S.B.'s condition. The trial court refused to admit the evidence. Boyd then attempted to proffer the evidence to create a record of the evidence for appeal. The trial court denied this request also. However, following the trial, Boyd filed a written proffer of what this evidence would have shown, and that proffer is part of the record on appeal.

¶ 34 Before this court, Boyd contends the trial court committed reversible error in denying his request, made at trial, to proffer testimonial evidence of S.B.'s past sexual conduct for the appellate record. Boyd further contends that the trial court committed reversible error in failing to admit the evi-

dence at trial in the first instance because (1) the evidence was admissible under rule 412 of the Utah Rules of Evidence and (2) the State waived rule 412's protection. We address these contentions in order.

### A. Boyd's Attempt to Proffer Evidence

¶ 35 Boyd contends the trial court's failure to allow him to proffer testimonial evidence of S.B.'s past sexual conduct for the appellate record constitutes reversible error. We disagree.

¶ 36 A proffer is a mechanism by which a party may create an appellate record of what the evidence would have shown. Boyd was, in fact, accorded the opportunity to create an appellate record on this issue and did so by filing a written proffer. Even accepting Boyd's contention that the court's refusal to allow him to proffer testimony at trial was erroneous, there was no harm in that error as Boyd was later allowed to create a record of the evidence. As we have previously held, " 'we will not reverse a conviction unless the error is substantial and prejudicial in the sense that there is a reasonable likelihood that in its absence there would have been a more favorable result for the defendant.' " *State v. Burns*, 2000 UT 56, ¶ 35, 4 P.3d 795 (quoting *State v. Young*, 853 P.2d 327, 361 (Utah 1993)) (further quotation omitted). Here, Boyd's only allegation of harm is the vague concern that, as opposed to the proffer of testimony, the written proffer "might not be enough." However, if the written proffer itself was inadequate, the fault lies with Boyd himself, not the trial court. Therefore, we find the trial court did not commit reversible error.

### B. Admissibility of S.B.'s Sexual History

¶ 37 Boyd next contends that the trial court committed reversible error in refusing to admit the evidence at trial because (1) the evidence was not precluded by rule 412 of the Utah Rules of Evidence and (2) the State waived the protection that rule 412 provides to victims of rape. We find that the court did not commit reversible error in excluding the evidence of S.B.'s sexual history.

### 1. Admissibility Under Rules 412 and 403

¶ 38 Rule 412 provides that "evidence offered to prove that any alleged victim engaged in other sexual behavior" is inadmissible. An exception to this rule exists, however, for "evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of the ... injury, or other physical evidence." Utah R.Evid. 412(b)(1). The trial court found that the evidence did not fit this exception. Boyd contends this was error. We agree. Insofar as the evidence was offered to demonstrate another potential source for her physical condition following the rape, it was admissible under rule 412(b)(1).[4]

¶ 39 This does not resolve the issue, however. Evidence that fits the exception "may still be excluded if it does not satisfy requirements of the other evidence rules, including Rule 403." Utah R.Evid. 412 advisory committee's note. While the trial court excluded the evidence under rule 412, it also found the evidence inadmissible under rule 403. Specifically, the court found the evidence was irrelevant, its probative value did not outweigh its prejudicial value, and it created the danger of confusing the issues before the jury.

¶ 40 We allow trial courts "considerable freedom in applying [rule 403] to the facts, freedom to make decisions which appellate judges might not make themselves ab initio but will not reverse." *State v. Pena*, 869 P.2d 932, 937–38 (Utah 1994). Accordingly, we will not reverse the trial court's ruling unless we find it was "beyond the limits of [reasonableness]." *State v. Menzies*, 889 P.2d 393, 404 (Utah 1994). Even should we find such error, we will only reverse if there is a showing of harm, "i.e., if absent the error there is a reasonable likelihood of an outcome more favorable to the defendant." *Dunn*, 850 P.2d at 1221.

¶ 41 When applying rule 403 to the admissibility of a rape victim's past sexual conduct, there is a presumption of inadmissibility:

> Such evidence is admissible only when the court finds under the circumstances of the particular case such evidence is relevant to a material factual dispute and its probative value outweighs the inherent danger of unfair prejudice to the [victim], confusion of issues, unwarranted invasion of the complainant's privacy, considerations of undue delay and time waste and the needless presentation of cumulative evidence.

*State v. Williams*, 773 P.2d 1368, 1370 (Utah 1989) (quoting *State v. Johns*, 615 P.2d 1260, 1264 (Utah 1980)).

¶ 42 Here, it was undisputed that Boyd and S.B. had sexual intercourse on the night in question. The issue was whether or not she consented. Boyd contends that evidence showing S.B. had engaged in sexual intercourse with another young man earlier that evening was probative of this issue as it (1) suggested that the reason there was so much debris in S.B.'s vaginal area was because she had twice engaged in intercourse in the same area and not because of her active struggle against a rapist and (2) explained some of the bruises in her vaginal area. We find that the trial court did not abuse its discretion in ruling that the probative value of this evidence did not outweigh its inherent prejudicial value.

¶ 43 While Dr. Larsen testified that the amount of debris was consistent with S.B.'s allegation of rape, he also admitted that it could have been the result of consensual intercourse. Thus, demonstrating an alternate source for some of the debris was not highly probative to the question that was before the jury, i.e., whether the intercourse was consensual. Similarly, Dr. Larson testified that the bruising resulted from a "forceful" attempt to penetrate beyond S.B.'s hymen. Mere evidence of a prior sexual encounter would not rebut this. There was no allegation that S.B. had engaged in consensual "rough" sex, which could have been the source of some of the bruising. Accordingly, Boyd's allegation

---

4. There is no exception in rule 412 that allows for the admission of past sexual conduct to impeach witnesses. Insofar as the evidence was offered to impeach S.B. and Dr. Larsen, the trial court properly ruled that it was excluded by rule 412.

had little probative value to demonstrate that he had consensual intercourse with S.B. Because evidence that S.B. had sexual intercourse on the evening of the rape prior to her encounter with Boyd had little probative value, we find that the trial court did not abuse its discretion in determining the probative value of the evidence did not outweigh its inherent prejudicial value.

2. Waiver of Rule 412's Protection

¶ 44 Alternatively, Boyd argues that both S.B. and Dr. Larson testified of S.B.'s prior sexual history, thereby placing that history at issue and waiving the protection provided by rule 412. We disagree.

¶ 45 S.B. testified that, by raping her, Boyd "took something from me that I can't ever take back." While Boyd contends that she was referring to her virginity, this is not necessarily so. S.B. did not testify that she was a virgin. As the State argues, her statement could refer, for example, to her dignity and self-respect. Therefore, we find the trial court did not commit reversible error in concluding S.B.'s testimony did not waive the protection of rule 412.

¶ 46 Dr. Larsen, however, did testify that he believed S.B. was a virgin. Boyd contends that by so referring to her sexual history, the safeguards set forth in rule 412 were waived. We disagree. Rule 412 "safeguards the alleged victim from the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact finding process." Utah R.Evid. 412 advisory committee's note. Thus, the safeguards of rule 412 are for the benefit of the victim herself, in this case, S.B., and only she could have waived them. The trial court did not commit reversible error in ruling the testimony of Dr. Larsen did not waive the protection afforded S.B. under rule 412.

### VIII. JURY DELIBERATION

¶ 47 The jury began deliberation shortly after 5:00 p.m. on the day of closing arguments. After deliberating for five or six hours, the jury returned with its verdict of guilty. Boyd contends the trial court erred in not advising the jury that they could adjourn at the late hour and return to court the next day to deliberate. The trial court's failure to so advise the jury, Boyd argues, was tantamount to coercing the verdict from it. *See, e.g., State v. Heaps,* 2000 UT 5, ¶¶ 13–18, 999 P.2d 565.

¶ 48 As Boyd did not raise this objection below, we review it for plain error. As noted above, to succeed, Boyd must demonstrate "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *Dunn,* 850 P.2d at 1208–09.

¶ 49 The trial court did not coerce a verdict from the jury in this case. One juror did express some concern about the late hour, although the specific substance of this concern is not in the record. However, several other jurors stated the late hour had no effect on their deliberations. Further, the jury never reported any difficulties in reaching a verdict, nor did it express a desire to halt deliberations for the evening. In these circumstances, we find the trial court's failure to advise the jury that it could adjourn for the evening was not error.

### CONCLUSION

¶ 50 Boyd has failed to demonstrate any reversible error below. We therefore affirm his conviction for rape.

¶ 51 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT's opinion.