**2015 UT App 106**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
JAMES GRAY,
Defendant and Appellant.

Opinion
No. 20120420-CA
Filed April 30, 2015

Third District Court, Salt Lake Department
The Honorable Anne Stirba
No. 991921214

Joel J. Kittrell and Kristina H. Ruedas, Attorneys
for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
STEPHEN L. ROTH and JOHN A. PEARCE concurred.

ORME, Judge:

¶1     Defendant James Gray appeals his convictions on one count of sodomy on a child, three counts of sexual abuse of a child, and one count of object rape of a child. We affirm.

## BACKGROUND[1]

¶2     In 1999, the victim told her mother that Defendant had sexually abused her since she was six years old. The victim's mother called a family member but did not call the police. A few months later, the victim told a friend about the abuse, and her friend suggested that she talk with a teacher or school counselor. The next day, the victim talked to her school counselor, who called the police.

¶3     Defendant was subsequently charged with one count of sodomy on a child, three counts of sexual abuse of a child, and one count of object rape of a child for conduct that occurred "on or about November 1, 1991 to October 31, 1997."

¶4     At trial, the victim testified that the first instance of abuse occurred in 1990 or 1991, when she was around seven years old, and that "it was sunny outside." Defendant called to the victim from inside his bedroom to get him a drink. The victim went to Defendant, who was lying on his bed in his underwear, and he said "he wanted to show [her] something." When the victim got onto the bed, Defendant "took [her] hand and put it down to his penis" under his underwear, and he "[showed her] how to move up and down."

¶5     The victim also testified to another instance of abuse that occurred right before a vacation to Disneyland when she was around twelve years old. At that time, the victim was sleeping in her living room. Around two or three o'clock in the morning, Defendant started touching the victim's breasts over her pajamas, asking her to wake up and calling her name. Defendant also reached down and touched the victim's vagina over her pajamas. This touching lasted for about ten minutes while the victim stayed still and pretended to be asleep.

---

1."We view the facts in the light most favorable to the jury verdict and recite them accordingly." *State v. Loose*, 2000 UT 11, ¶ 2, 994 P.2d 1237.

¶6     Another time, when the victim was around eleven or twelve years old, Defendant told her that he wanted to show her something, and he produced a pink dildo. The victim testified that Defendant rubbed the dildo on her breast and then applied a lubricant to the dildo. Defendant then put the dildo "on the outside of [her] vagina." When she asked Defendant to stop, he stopped and said he was sorry. However, Defendant proceeded to pull out a bottle of "strawberry flavored" liquid, which he put on her breasts and then licked off. The victim testified that this was the only time Defendant touched her with the dildo.

¶7     Also, when the victim was still eleven or twelve years old, Defendant joined her in the shower and "told [her] to put [her] one leg up to the side of the tub." Defendant, who was naked, sat down in the tub and told her to hold onto his head while he licked her vagina for around ten minutes. This happened again once or twice.

¶8     The victim further testified that while her family's house was being remodeled, she was in the living room watching a movie when Defendant started to massage her breasts and vagina over her clothing from behind. Defendant asked her if she was aroused, and because she "didn't know exactly what [that] meant," she said, "No."

¶9     Finally, the victim testified that, at periodic intervals, Defendant sexually abused her "[a]bout three times a week" from the time she was seven and that the abuse stopped only after a mutual acquaintance talked to Defendant in the fall of 1997. She also testified that she remembered "flashes" of events. For example, the victim testified that Defendant's penis "sometimes" touched her vagina, "but it never went in." Defendant's fingers went inside her vagina "[o]nce or twice," and "it felt really uncomfortable" and "like a little burning." Defendant also told her that "he was teaching [her] how to please [her] husband when [she] would be getting married."

¶10    Soon after police learned of the sexual abuse, the victim was examined by a pediatrician, who later testified as an expert witness.

At trial, the pediatrician testified about her examination of the victim. Specifically, the pediatrician testified that the victim told her that Defendant had touched her with his hands and his penis, tried to insert his penis into her vagina, and tried to insert his fingers into her vagina. The victim also told the pediatrician that, while "there had been pain," there "had not been bleeding."

¶11　The pediatrician testified to taking a behavioral history of the victim, which showed that the victim exhibited signs of depression, that the victim had been missing school and was angry, that she did not seem interested in much of anything, and that she had problems with her appetite when she was younger. The pediatrician testified that "[t]he different things described in the behavioral history could all have been caused by sexual abuse." She clarified, however, that "the behavioral changes are not specific to sexual abuse [and other] things could cause them [as] well." The pediatrician also conducted a physical examination of the victim and testified that, while the "entire exam was normal," "a normal exam fits the history" the victim gave.

¶12　On cross-examination, defense counsel confirmed with the pediatrician that she had given child abuse talks throughout Utah to prosecutorial offices, that she had been in court around two hundred times, and that about ninety percent of the time she testified for the prosecution. Defense counsel also asked the pediatrician how she came to her conclusions and if she "took [the victim's] word" in making her conclusions, to which the pediatrician replied, "I felt that she interviewed honestly. I took her word and added to that the behavioral changes that existed."

¶13　Defendant testified at trial and denied the allegations of sexual abuse. He testified that he found out that the victim was forging checks on his account, the implication being that the claims of sexual abuse were made in retaliation for his expressed anger. At trial, the victim admitted to writing one check on Defendant's account and signing Defendant's name, but she insisted this was done with his permission.

¶14 After the State rested its case, Defendant moved to dismiss the charges against him on the basis that there was insufficient evidence to permit the jury to deliberate. The trial court denied the motion and ruled that there was "some evidence as to each element of each count" and that the jury needed to decide the issues. The jury convicted Defendant on all counts. He now appeals.[2]

ISSUES AND STANDARDS OF REVIEW

¶15 Defendant raises several issues on appeal. First, Defendant argues that the evidence was insufficient to convict him of sexual

---

2. Defendant was sentenced on March 23, 2001. That same day, Defendant filed a motion for a new trial. Defendant's then-counsel failed to pursue the motion and failed to pursue an appeal. On August 27, 2009, Defendant requested a *Manning* hearing to reinstate his right to appeal. *See Manning v. State*, 2005 UT 61, ¶ 31, 122 P.3d 628 (holding that "upon a defendant's motion, the trial or sentencing court may reinstate the time frame for filing a direct appeal where the defendant can prove, based on facts in the record or determined through additional evidentiary hearings, that he has been unconstitutionally deprived, through no fault of his own, of his right to appeal"). In addition, on March 24, 2010, Defendant filed a memorandum in support of his motion for new trial. On August 12, 2010, Judge Randall N. Skanchy of the Third District Court held an evidentiary hearing on Defendant's *Manning* motion, but the hearing was ultimately continued. On April 27, 2012, Judge Skanchy denied Defendant's motion for a new trial as untimely. Defendant filed a Notice of Appeal from the denial on May 10, 2012. The continued portion of Defendant's *Manning* hearing was held on April 8, 2013. Judge Skanchy found that Defendant had been unconstitutionally deprived of his right to appeal and reinstated Defendant's right to appeal on July 31, 2013. Defendant filed an amended notice of appeal on August 23, 2013.

abuse of a child.[3] Second, Defendant argues that the evidence was insufficient to support his conviction of object rape of a child.[4] When a defendant challenges a jury verdict on the ground that the evidence is insufficient, "[w]e review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict." *State v. Hirschi*, 2007 UT App 255, ¶ 15, 167 P.3d 503 (alteration in original) (citation and internal quotation marks omitted). "We reverse . . . only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that

---

3. The parties differ as to the proper classification of the first issue. In his brief, Defendant identifies the challenged conviction as "Count I, Sodomy of a Child" and argues that the victim's testimony that Defendant made her touch his penis under his underwear when she was around seven years old was insufficient to convict him of sodomy on a child. However, as the State's brief correctly points out, the evidence that Defendant cites in his brief was evidence the State presented in support of "Count IV, Sexual Abuse of a Child." The State therefore addresses Defendant's claim as a challenge to his sexual-abuse-of-a-child conviction, and after reviewing Defendant's arguments in support of his claim, we are inclined to adopt the State's approach and treat Defendant's claim as a challenge to his conviction for sexual abuse of a child rather than sodomy on a child. However, to be thorough, we also consider the sufficiency of the evidence supporting Defendant's sodomy-on-a-child conviction. *See infra* ¶¶ 24–26.

4. Defendant's brief also raises the issues of whether the jury was improperly instructed on the elements of object rape of a child and whether Defendant's trial counsel was ineffective for failing to object to the jury instruction for object rape of a child. Defendant conceded the issue on the jury instruction at oral argument, given points made in the State's brief and, therefore, we decline to address that issue. Accordingly, we also decline to address Defendant's ineffective-assistance claim related to that issue. We commend Defendant's counsel for their candor and professionalism in conceding this argument.

the defendant committed the crime of which he was convicted." *Id.* (omission in original) (citation and internal quotation marks omitted).

¶16 Defendant next contends that the trial court erred in allowing the pediatrician to testify that the victim was honest during her medical exam. "Because [D]efendant failed to raise this issue below, we review his claim for plain error." *State v. Baker*, 963 P.2d 801, 803 (Utah Ct. App. 1998).

¶17 Defendant also argues that the prosecutor committed misconduct by referencing uncharged conduct during his opening statement. "We review a trial court's handling of claimed prosecutorial misconduct for an abuse of discretion." *State v. King*, 2010 UT App 396, ¶ 13, 248 P.3d 984. However, "[w]here timely objections to particular statements were not made below, Defendant must establish either plain error or ineffective assistance of counsel to merit reversal." *State v. Clark*, 2014 UT App 56, ¶ 10, 322 P.3d 761.

¶18 Defendant's final argument is that his trial counsel provided ineffective assistance when he failed to object to the pediatrician's testimony regarding the victim's truthfulness. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Pedersen*, 2010 UT App 38, ¶ 9, 227 P.3d 1264 (citation and internal quotation marks omitted).

ANALYSIS

I. Sufficiency of Evidence

A.    Sexual Abuse of a Child

¶19 Defendant first claims that the evidence was insufficient to support his conviction for sexual abuse of a child. A person commits sexual abuse of a child if,

> under circumstances not amounting to rape of a
> child, object rape of a child, sodomy on a child, or an
> attempt to commit any of these offenses, the actor
> touches the anus, buttocks, or genitalia of any child,
> [or] the breast of a female child.

Utah Code Ann. § 76-5-404.1(2) (LexisNexis Supp. 2014).[5]

¶20    In this case, the jury instructions permitted the jury to find
that Defendant committed sexual abuse of a child only if it
concluded that such abuse occurred "on or about November 1,
1991 through October 31, 1997." At trial, the victim testified that the
first instance of abuse occurred in 1990 or 1991 when she was
around seven years old and "it was sunny outside." Defendant
argues that the victim turned seven on December 18, 1990, and that
"the State was required to prove that [Defendant] had engaged in
a sexual act with a child after November 1, 1991." Thus, Defendant
argues, because the victim was only seven years old for a few
weeks after November 1, 1991, during a time of year when it is not
typically sunny, and because she did not remember the exact date
of the abuse, her "testimony regarding her age and the weather at
the time of [the] alleged abuse makes it very likely that any alleged
conduct occurred early on in her seventh year, outside the charged
period."

¶21    In determining whether the evidence was sufficient to
support the jury's verdict, we do not "sit as a second trier of fact."
*State v. Boyd*, 2001 UT 30, ¶ 16, 25 P.3d 985. "It is the *exclusive
function of the jury* to weigh the evidence and *to determine the
credibility of the witnesses*. So long as there is some evidence,
including reasonable inferences, from which findings of all the
requisite elements of the crime can reasonably be made, our

---

5. Except where otherwise noted, we cite the current edition of the
Utah Code Annotated as a convenience to the reader. Only when
the statutory provisions in effect at the relevant time differ
materially from the statutory provisions now in effect do we cite
earlier versions of the code.

inquiry stops." *Id.* (emphasis in original) (citation and internal quotation marks omitted).

¶22    Here, the jury was presented with some evidence of each element of sexual abuse of a child during the charged period. *See id.*; *State v. Mead*, 2001 UT 58, ¶¶ 66–67, 27 P.3d 1115 (concluding that the evidence was sufficient to uphold the defendant's conviction for criminal solicitation where the only evidence to support the jury's verdict was testimony from a single witness). First, the victim testified that "around" 1990 or 1991, when she was "[a]round seven," Defendant made her touch his penis under his underwear. But more importantly, she testified that when Defendant was around, he sexually abused her "[a]bout three times a week" from the time she was seven and that the abuse did not stop until after a mutual acquaintance talked to Defendant in the fall of 1997.[6] Thus, even if the victim was mistaken as to when the abuse started, her testimony as to other instances of sexual abuse places multiple instances of abuse well within the charged period.

¶23    Although Defendant denied having ever abused the victim, the jury's apparent decision to give the victim's testimony "significant weight and credibility was within the prerogative of the trier of fact." *See State v. Wilkerson*, 612 P.2d 362, 365 (Utah 1980). From the victim's testimony, the jury could properly conclude that Defendant's conduct satisfied all of the elements of sexual abuse of a child, *see* Utah Code Ann. § 76-5-404.1(2), and that at least one incident of abuse occurred within the requisite time frame, i.e., in the period between approximately November 1, 1991, and October 31, 1997. Because it was within the jury's prerogative to so find, we conclude that the evidence was sufficient to convict Defendant of sexual abuse of a child.

---

6. Notably, nothing in the jury instructions for this count limited the jury's consideration of the charge of sexual abuse of a child to the specific incident where Defendant made the victim touch his penis.

B.      Sodomy on a Child

¶24     For essentially the same reason, we conclude that there was sufficient evidence to convict Defendant of sodomy on a child. A person commits sodomy on a child if "the actor engages in any sexual act upon or with a child who is under the age of 14, involving the genitals or anus of the actor or the child and the mouth or anus of either person, regardless of the sex of either participant." Utah Code Ann. § 76-5-403.1(1).

¶25     Here, the jury was presented with some evidence of each element of sodomy on a child. *See State v. Boyd*, 2001 UT 30, ¶ 16, 25 P.3d 985. The victim testified that when she was eleven or twelve, Defendant, who was naked, joined her in the shower and "lick[ed her] vagina" for ten minutes. The victim stated that she remembered this particular time that Defendant performed oral sex on her "because it was the first time it ever happened to [her]," and "it felt . . . really weird that time." She also testified that Defendant did it again "once [or] twice."

¶26     Based on the victim's testimony, the jury could properly find that Defendant's conduct satisfied all of the elements for sodomy on a child. *See* Utah Code Ann. § 76-5-403.1(1). We see no reason to second guess the jury's determination and, therefore, we conclude that the evidence was sufficient to convict Defendant on the charge of sodomy on a child.

C.      Object Rape of a Child

¶27     Defendant next claims that the evidence was insufficient to support his conviction for the crime of object rape of a child. Specifically, Defendant argues that the State failed to prove "penetration, however slight," under section 76-5-402.3 of the Utah Code. Defendant was charged under the 1995 version of the Utah Code. Under that version, a person committed object rape of a child when the person

> cause[d] the penetration, however slight, of the genital or anal opening of a child who [was] under the age of 14 by any foreign object, substance, instrument, or device, not including a part of the human body, with intent to cause substantial emotional or bodily pain to the child or with the intent to arouse or gratify the sexual desire of any person . . . .

Utah Code Ann. § 76-5-402.3 (Michie 1995). At trial, the victim testified that Defendant put a dildo "on the outside of [her] vagina." According to Defendant, under *State v. Simmons*, 759 P.2d 1152 (Utah 1988), the State must have proven that the object in question was at least "between the outer folds of [the victim's] labia" during the incident to constitute penetration. *Id.* at 1154. Defendant argues that because the victim testified that Defendant put the dildo "on the outside" of her vagina, the State could not have proven that the dildo was between the folds of her labia.

¶28    In *Simmons*, the defendant was convicted of rape of a child based on the child's testimony that the defendant had "put the tip of his penis 'on' her labia." *Id.* at 1153–54. On appeal, the defendant argued that the evidence was insufficient to sustain his conviction because there was no showing of penetration as required under the version of the law then in effect, *see* Utah Code Ann. § 76-5-407(2) (Allen Smith Supp. 1985), and the Utah Supreme Court agreed, *see Simmons*, 759 P.2d at 1153–54. The Supreme Court noted that the "generally accepted rule is that entry between the outer folds of the labia is sufficient to constitute 'penetration' as that term is commonly used in defining the crime of rape." *Id.* at 1154. Therefore, the child's testimony in *Simmons* that the defendant "put the tip of his penis 'on' her labia" was insufficient to constitute even slight penetration, and the Supreme Court reversed the defendant's conviction for rape of a child. *Id.* at 1154–55.

¶29    Defendant's reliance on *Simmons* is misplaced. At the time *Simmons* was decided, the relevant section of the Utah Code, which defined "'[p]enetration' or 'touching' sufficient to constitute [the]

offense," provided, "In any prosecution for unlawful sexual intercourse, rape, or sodomy, any sexual penetration or, in the case of sodomy, any touching, however slight, is sufficient to constitute the offense," Utah Code Ann. § 76-5-407(2) (Allen Smith Co. Supp. 1985). Thus, to be clear, "sexual penetration" was required for most offenses, though "any touching" was sufficient for a sodomy charge. *See id.* But section 76-5-407(2) has since been amended. In 1989, the Utah Legislature added "rape of a child, or object rape of a child" to the crimes for which "any touching, however slight" was "sufficient to constitute the relevant element of the offense." *See* Act of Feb. 16, 1989, ch. 235, § 2, 1989 Utah Laws 765, 765 (codified at Utah Code Ann. § 76-5-407(2) (Michie Supp. 1989)). Thus, at the time Defendant committed his crime, the law provided, "In any prosecution for unlawful sexual intercourse, rape, rape of a child, object rape of a child, or sodomy, any sexual penetration or, in the case of sodomy, rape of a child, *or object rape of a child any touching, however slight, is sufficient to constitute the relevant element of the offense*." Utah Code Ann. § 76-5-407(2) (Michie 1995) (emphasis added). "Penetration" as defined in *Simmons*, i.e., "entry between the outer folds of the labia," *see* 759 P.2d at 1154, was no longer required to commit the offense of object rape of a child; rather, "any touching, however slight" was all that was necessary to constitute the offense, *see* Utah Code Ann. § 76-5-407(2) (Michie 1995).

¶30    At trial, the victim testified that when she was around eleven or twelve years old, Defendant took out a pink dildo and first rubbed it on her breast. He then applied a lubricant to the dildo and put the dildo "on the outside of [her] vagina." Because "entry between the outer folds of the labia" was no longer required to commit the offense of object rape of a child at the time Defendant put the dildo on the outside of the victim's vagina, Defendant's act was sufficient to establish the requisite "touching, however slight" under section 76-5-407(2) of the Utah Code. As such, Defendant's act was sufficient to constitute the element of "penetration" under the object rape of a child statute then in effect. *See* Utah Code Ann. § 76-5-402.3 (Michie 1995). We therefore

conclude that there was sufficient evidence to support Defendant's conviction for object rape of a child.

## II. Expert Testimony

¶31    Defendant also claims that the trial court erred in allowing the State's medical expert, the pediatrician who examined the victim, to testify regarding the victim's truthfulness, in violation of rule 608(a) of the Utah Rules of Evidence.[7] At trial, Defendant's counsel pursued the following line of questioning during cross-examination:

> [Defense Counsel]: Simply tell me, if there is nothing to show that this young lady has any physical evidence to show that she has been sexually abused—now, I said physical—how do you arrive to the conclusion that she was sexually abused?
>
> [Pediatrician]: The diagnosis is based on her interview, the statements that she makes, the behavioral changes that are consistent with sexual abuse, the well known fact that 80 percent or more of child sexual abuse cases have normal physical examinations and that physical findings are not the way to make the diagnosis.
>
> [Defense Counsel]: But you're not a psychiatrist and you're not a psychologist, so all we have here really

7. Rule 608(a) provides:
> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

Utah R. Evid. 608(a).

> comes down to the barest of points, is the fact that you took her word to make your conclusion. Whatever [the victim] told you, you took her word?
>
> [Pediatrician]: I felt that she interviewed honestly. I took her word and added to that the behavioral changes that existed.

Defense counsel did not object to the pediatrician's statements, which were, after all, made in response to his questions.

¶32     Generally, "claims not raised before the trial court may not be raised on appeal," and we will not consider them unless "exceptional circumstances exist or plain error occurred." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (citations and internal quotation marks omitted). Defendant argues the applicability of the plain-error exception to the preservation rule. But under the doctrine of invited error, Utah courts "have declined to engage in even plain error review when counsel, either by statement or act, affirmatively represented to the [trial] court that he or she had no objection to the [proceedings]." *State v. Winfield*, 2006 UT 4, ¶ 14, 128 P.3d 1171 (alterations in original) (citation and internal quotation marks omitted). The invited-error doctrine "prohibits a party from setting up an error at trial and then complaining of it on appeal." *State v. Layman*, 953 P.2d 782, 785 (Utah Ct. App. 1998) (citation and internal quotation marks omitted).

¶33     For example, in *In re E.D.*, 876 P.2d 397 (Utah Ct. App. 1994), both parents appealed an order terminating their parental rights. *Id.* at 398. At trial, two therapists testified that they believed the children had been sexually abused. *See id.* at 402. On appeal, the parents argued, among other things, "that it was improper for the court to consider testimony bearing upon the perceived credibility of the children." *Id.* at 401. Specifically, the parents argued that the trial court improperly permitted the testimony of the two therapists, who testified "that they believed the children were telling the truth about being sexually abused." *Id.* at 402. Because the parents had not objected to this testimony at trial, this court

determined that the parents had waived the issue. *Id.* Moreover, during trial, "counsel for the parents *asked* three witnesses whether they thought the children were credible." *Id.* (emphasis in original). Accordingly, this court concluded that "even if it were error to admit the testimony, it was 'invited' error[,] which is viewed with disfavor in Utah." *Id.*

¶34    Similar to *In re E.D.*, the pediatrician's statement concerning the victim's truthfulness was in direct response to a line of questioning by Defendant's counsel. Defense counsel asked the pediatrician how she arrived at her conclusion and whether she "took [the victim's] word" in her evaluation, and thus, Defendant elicited the very testimony he now protests. Accordingly, we conclude that even if it were error to admit the pediatrician's testimony, it was invited error. Under the invited-error doctrine, Defendant is prohibited from now complaining of an alleged error that he set up. *See Layman*, 953 P.2d at 785. Accordingly, we decline to further address this argument.

### III. Prosecutorial Misconduct

¶35    Defendant next argues that the prosecutor engaged in misconduct during his opening statement when he made several references to uncharged, alleged instances of sexual abuse of the victim.

¶36    A prosecutor's remarks

> constitute misconduct meriting reversal if they "call to the attention of the jurors matters they would not be justified in considering in determining their verdict and . . . the error is substantial and prejudicial such that there is a reasonable likelihood that in its absence, there would have been a more favorable result for the defendant."

*State v. Maestas*, 2012 UT 46, ¶ 159, 299 P.3d 892 (omission in original) (quoting *State v. Tillman*, 750 P.2d 546, 555 (Utah 1987)).

"In assessing whether allowing the prosecution's comments was a harmful error, 'we will consider the comments both in context of the arguments advanced by both sides as well as in context of all the evidence.'" *Id.* (quoting *State v. Bakalov*, 1999 UT 45, ¶ 56, 979 P.2d 799). However, failure to object to the prosecution's improper remarks at trial "waives the claim unless the remarks reach the level of plain error." *State v. Palmer*, 860 P.2d 339, 342 (Utah Ct. App. 1993). Defendant failed to raise timely objections to the prosecutor's opening remarks at trial, and so he argues that the plain-error exception to the preservation rule applies.

¶37 To establish plain error, Defendant must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993).

¶38 Defendant points out that he was charged for conduct "that occurred between November 1991 through October 31, 1997." But during his opening statement, the prosecutor made three references to alleged abuse for which Defendant had not been charged. Specifically, during his opening statement, the prosecutor said:

> Now, [the victim] doesn't have exact dates as to when [the abuse] started or when it ended and that's why the Information that was just read says from November 2, 1991 through October 31st of 1997. The abuse started when she was six. In fact that was 1989. And the allegation is from 1991. Because of [the] statute of limitations, [the] State can only file charges that go back eight years. This case was filed in . . . October of 1999. So we go back eight years from there.

The prosecutor also remarked, "And as I indicated, from the time she was six years old to 1997 this type of abuse happened." Finally, the prosecutor told the jury, "You have heard about the six charges.

I have explained to you the statute-of-limitation reason why we're not going back to 1989, but going to 1991."

¶39    Each of these statements referred to alleged conduct for which Defendant had not been charged because the conduct was outside of the period specified in the charging document. Defendant therefore argues that "without the remarks there is a reasonable likelihood that [Defendant] would have secured a more favorable outcome" and that the "remarks compel a reversal of [Defendant's] conviction."

¶40    We agree with Defendant that it was inappropriate for the prosecutor to refer to the alleged pre-1991 conduct because it was uncharged and thus called the jurors' attention to matters they were not justified in considering in reaching their verdict. *See Maestas*, 2012 UT 46, ¶ 159. But even assuming that the error should have been obvious to the trial court, we disagree with Defendant that the requisite prejudice resulted from the prosecutor's statements.[8] *See Dunn*, 850 P.2d at 1208.

¶41    The evidence placing Defendant's conduct within the time period for which he was actually charged was overwhelming. *Cf. State v. King*, 2010 UT App 396, ¶ 35, 248 P.3d 984 (noting that "we more readily find errors to be harmless when confronted with overwhelming evidence of the defendant's guilt"). The jury heard testimony from the victim that Defendant made her touch his penis, that he touched her breasts and vagina, that he licked her breasts and vagina, that he touched a dildo to her vagina, that he touched his penis to her vagina, that he put his fingers in her vagina, and that he abused her "[a]bout three times a week" during periodic intervals spanning several years within the salient time period. *See supra* ¶¶ 4–9. There is nothing to suggest that the jury would have viewed Defendant more favorably had it thought the extensive abuse lasted a "mere" six years rather than eight or that

---

8. We will assume that prejudice resulted to Defendant unless we can conclude that the error was harmless beyond a reasonable doubt. *See State v. Davis*, 2013 UT App 228, ¶¶ 9–12, 311 P.3d 538.

it otherwise latched on to the prosecutor's statements and relied on them when it found Defendant guilty.[9] Accordingly, although it was inappropriate for the prosecutor to refer to the uncharged conduct, we conclude, beyond a reasonable doubt, that the prosecutor's statements were not so prejudicial as to warrant reversal.

## IV. Ineffective Assistance of Counsel

¶42 Finally, Defendant, represented by new counsel on appeal, argues that his trial counsel was ineffective for "failing to object to . . . [the pediatrician's] testimony" and for failing "to move to strike the testimony as unresponsive, inappropriate and inadmissible." To establish that he received ineffective assistance of counsel, Defendant must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If a defendant fails to establish either of the two parts of the *Strickland* test, counsel's assistance was constitutionally sufficient, and we need not address the other part of the test." *State v. Medina-Juarez*, 2001 UT 79, ¶ 14, 34 P.3d 187.

¶43 To demonstrate that counsel's performance was deficient, Defendant "must overcome the strong presumption that [his] trial counsel rendered adequate assistance, by persuading the court that there was *no conceivable tactical basis* for counsel's actions." *State v.*

---

9. The trial court greatly reduced any harm resulting from the prosecutor's improper statements. During its deliberations, the jury asked whether it could consider any conduct occurring prior to the dates charged with regard to count IV. The trial court responded by telling the jury, "You cannot base a conviction under Count IV upon an event you find occurred prior to November 1, 1991. Count IV has to pertain to an event that you find occurred between November 1, 1991, and October 31, 1997." Thus, any prejudicial effect from the prosecutor's statements was largely neutralized by the court's specific admonition to the jury.

*Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (emphasis and alteration in original) (citations and internal quotation marks omitted). Defendant's bare assertion that "[n]o possible tactical reason existed for defense counsel to engage in such a deficient manner" does not overcome this presumption.

¶44    "[W]hen viewing 'the variety of circumstances faced by defense counsel,' a conscious choice not to object to arguably inadmissible testimony may, at times, fall within 'the range of legitimate decisions regarding how best to represent a criminal defendant.'" *State v. Marble*, 2007 UT App 82, ¶ 12, 157 P.3d 371 (quoting *Strickland*, 466 U.S. at 689). Likewise, a defendant cannot establish that his counsel's performance was deficient under *Strickland* "by merely showing that counsel elicited arguably inadmissible testimony." *Id.* Rather, a defendant must still "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and internal quotation marks omitted).

¶45    Upon reviewing the transcript of defense counsel's cross-examination of the pediatrician in conjunction with his closing argument, we can conceive of a sound tactic served by defense counsel's line of questioning. To begin with, it is reasonable to conclude that defense counsel elicited the pediatrician's testimony to call to the jury's attention that there was no independent physical evidence of abuse. After all, the pediatrician testified that she conducted a physical examination of the victim and that "[h]er exam was normal."

¶46    In addition, defense counsel's line of questioning may well have been designed to highlight the fact that although the "things described in [the victim's] behavioral history could all have been caused by sexual abuse," the pediatrician readily conceded that "the behavioral changes [were] not specific to sexual abuse" and that "[o]ther things could [have] cause[d] them [as] well." Defense counsel also highlighted the fact that the pediatrician had been in

court around two hundred times and that she had testified for the prosecution about ninety percent of the time, arguably calling into question her objectivity.

¶47    Moreover, defense counsel's strategy in eliciting the pediatrician's statements is illustrated by his closing argument, where he used the pediatrician's statements to question her reliability as an expert witness. Specifically, in closing argument, defense counsel stated:

> The prosecutor wants you to give credence to an expert. The instructions tell you you don't have to. I cannot give credence to an expert who says I only teach prosecutors. I cannot give credence to an expert that says I base my findings on hearsay testimony that I did not even confirm myself, personally. I took for face value what was written and what was stated to me.

Based on defense counsel's questioning during cross-examination and his use of the pediatrician's answers during his closing argument, it is reasonable to conclude that defense counsel's line of questioning was designed to demonstrate that the pediatrician's testimony was not reliable. Accordingly, the record demonstrates that counsel had a conceivable tactical basis for eliciting the pediatrician's statement regarding the victim's truthfulness. We therefore conclude that Defendant has not shown that defense counsel's performance was deficient under the *Strickland* test. *See* 466 U.S. at 687. Because Defendant has failed to establish deficient performance, "we need not address the [prejudice] part of the test." *State v. Medina-Juarez*, 2001 UT 79, ¶ 14, 34 P.3d 187.[10]

---

10. Defendant also argues that his trial counsel was ineffective for failing to object to the prosecutor's remarks during opening statement. Because we conclude above that Defendant was not prejudiced by the prosecutor's opening remarks, *see supra* ¶ 41, his

(continued...)

CONCLUSION

¶48   We conclude that there was sufficient evidence to find Defendant guilty of both sexual abuse of a child and object rape of a child. We further conclude that any error committed by the trial court in allowing the pediatrician to testify regarding the victim's truthfulness was invited error. In addition, we conclude that the prosecutor's opening remarks were not so prejudicial as to warrant reversal. Finally, we reject the argument that Defendant received ineffective assistance of counsel at trial. We therefore affirm Defendant's convictions.

———————

10.(...continued)
ineffective-assistance claim relating to this issue necessarily fails for lack of prejudice, *see State v. Medina-Juarez*, 2001 UT 79, ¶ 14, 34 P.3d 187.